Peter J. BRENNAN, Secretary of Labor, United States Department of Labor, Petitioner,

v.

BUCKEYE INDUSTRIES, INC. and James E. Ledford, Respondents.

No. CV374-5.

United States District Court, S. D. Georgia, Dublin Division.

April 24, 1974.

B. C. Baxter, Jr., Asst. U. S. Atty., Augusta, Ga., Anthony B. Cuviello, Atty. U. S. Dept. of Labor, Atlanta, Ga., for petitioner.

Allan P. Clark, J. P. Jones, Coffman & Jones, Jacksonville, Fla., for respondents.

## ORDER

LAWRENCE, Chief Judge.

On Wednesday, February 20, 1974, Occupational Safety and Health Compli-ance Officer Margie L. Preston arrived at the business premises of Buckeye Industries, Inc. at Wrightsville, Georgia[1] around 10:00 A.M. to conduct an inspection of the premises pursuant to the Occupational Safety and Health Act. 29 U.S.C. § 657(a).

She presented identification to James Ledford, plant manager, but no search warrant. According to the latter, Miss Preston told him that she was going to make a "general inspection". Mr. Ledford requested that she wait until the company's attorney J. P. Jones, arrived before commencing an inspection. He wished to have counsel present during the proposed inspection as Buckeye's "authorized representative".[2] The Compliance Officer informed Ledford that she could not wait until Mr. Jones could drive from Jacksonville, Florida, which is approximately two hundred miles distant. Subsequently, Mr. Ledford and Mr. Jones, in a telephone conversation, refused to allow the inspection without Mr. Jones being present and Miss Preston left.

The following day the Secretary of Labor filed an application under the Occupational Safety and Health Act of 1970 (29 U.S.C. § 651 et seq.) requesting that this Court order Buckeye Industries, Inc. and James E. Ledford to submit to an inspection of the premises. A Show Cause Order was issued on February 21, 1974, and an evidentiary hearing and argument was held on February 26th. At that time respondents filed a motion to dismiss.

No citations for alleged violations of the Act's regulations nor any complaints by employees of unsafe conditions at Buckeye Industries have been made to the "Occupational Safety and Health Administration. It was conceded by plaintiff that no probable cause for issuance of a search warrant was attempted pur-

---

1. The Company manufactures men's clothing. Orders are received from other manufacturers to cut their cloth and to sew, press and finish it. Sewing machines are used in the plant at Wrightsville.

2. The Act provides that "a representative of the employer . . . shall be given an opportunity to accompany the Secretary or his authorized representative during the physical inspection of any workplace . . . for the purpose of aiding such inspection." 29 U.S.C. § 657(e).

suant to 29 U.S.C. § 657(a) of the Occupational Safety and Health Act which provides that in order to carry out its purposes the Secretary

"(a) . . . upon presenting appropriate credentials to the owner, operator, or agent in charge, is authorized—

"(1) to enter without delay and at reasonable times any factory, plant, establishment, construction site, or other area, workplace or environment where work is performed by an employee of an employer; and

"(2) to inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent or employee."

In setting forth the purposes of the Occupational Safety and Health Act, Congress recognized the importance of safe and healthful working conditions by providing an enforcement program which shall include and prohibit giving advance notice of any inspection and established sanctions for violation thereof.[3] 29 U.S.C. § 651(b)(10). See also 29 U.S.C. § 666.

In resisting the application of the plaintiff for mandatory injunctive relief and an Order requiring Buckeye Industries to permit the proposed inspection, defendant contends that (1) this Court is without jurisdiction to entertain the present proceeding by the Secretary; (2) that the remedies provided in the Act with regard to sanctions against Buckeye Industries are exclusive and have not been exhausted, and (3) the Secretary's proposed application of §

8(a) of the Act in respect to warrantless inspection violates the search and seizure provision of the Fourth Amendment.

## JURISDICTION

"The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce. . . ."[4] 28 U.S.C. § 1337.

"Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by an agency or officer thereof expressly authorized to sue by Act of Congress." 28 U.S.C. § 1345.

Buckeye Industries argues that these jurisdictional provisions are not applicable in that the specific provisions of the Occupational Safety and Health Act are exclusive and govern any right of the United States to sue in connection with enforcement thereof as opposed to 28 U.S.C. § 1345 or § 1337. Defendant asserts that the Secretary of Labor is only authorized to seek relief in a district court in three specified instances: (1) Where he is attempting to enforce the subpoena power granted pursuant to 29 U.S.C. § 657(b); (2) to enjoin imminent dangers, 29 U.S.C. § 662; and (3) to collect civil penalties which have been levied pursuant to final orders of the Occupational Safety and Health Review Commission, 29 U.S.C. § 666(k). Counsel for Buckeye Industries argue that under no other circumstances than these has Congress authorized the Secretary to bring suit under the Act in the district courts of the United States.

. [1, 2] The absence of specific statutory authority for an action by the United States in a particular instance is no obstacle to original jurisdiction under §

---

3. In See v. City of Seattle, 387 U.S. 541, 545, 87 S.Ct. 1737, 1740, 18 L.Ed.2d 943, the Supreme Court noted that the element of surprise may be a "crucial aspect of routine inspections of business establishments".

4. The Occupational Safety and Health Act is based on the declared purpose of Congress to regulate commerce so as "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions. . . ." 29 U.S.C. § 651(b).

1345. It is settled that no such prerequisite exists to the appearance of the United States before its own courts. United States v. San Jacinto, 125 U.S. 273, 278–285, 8 S.Ct. 850, 31 L.Ed. 747; Bush v. Orleans Parish School Board, 191 F.Supp. 871 (E.D., La.), aff'd sub nom, Denny v. Bush, 367 U.S. 908, 81 S. Ct. 1917, 6 L.Ed.2d 1249; United States v. York et al., 398 F.2d 582 (6th Cir.). Nothing in the Act under consideration limits or affects the applicability of § 1337 or § 1345. Unless legislation should expressly provide that jurisdiction of a district court is limited by the special jurisdictional provisions of an Act, the right of the United States to sue under § 1337 and § 1345 is not affected. The United States may lawfully maintain suits in its own courts to prevent interference with the means it adopts to exercise its powers of government and to carry into effect its policies. Island Airlines, Inc. v. Civil Aeronautics Board, 352 F.2d 735, 744 (9th Cir.); United States v. LeMay, 322 F.2d 100 (5th Cir.).

■ I find that this Court has statutory jurisdiction to grant the mandatory injunction sought by plaintiff as to compliance with the right of representatives of the Secretary to enter defendant's place of business and to inspect the premises "without delay".

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Respondents argue that the proper route for the Secretary to pursue should an employer refuse to permit an inspection is to issue a citation and impose a proposed penalty under §§ 658 and 659 of the Act. In such event, if the employer desires to challenge the issuance of the citation, the correct procedure is for the party cited to file a notice of contest within fifteen days thereafter. The Review Commission will then determine the merits of the alleged violation. 29 U.S.C. § 659(c). Judicial review of

final orders by the Commission can be obtained in the United States Courts of Appeals, 29 U.S.C. § 660.

The administrative review established by §§ 658 through 660 permits an employer to contest citations for violations of the duties under § 654(a)(1) or the health and safety standards promulgated by the Secretary under § 655.[5] The Secretary has authority to issue citations if, "upon inspection or investigation" violations are noticed. 29 U.S.C. § 658(a). He is required thereafter to notify the employer of the proposed penalty.

■ The administrative remedies established by the Act do not contemplate the review of the refusal by an employer to permit inspection of the premises or provide an exclusive means of review thereof. All the benefit of unannounced inspections would be lost if an employer can delay same pending the outcome of protracted review on the administrative level before appeal to a Circuit Court of Appeals.

■ Proper interpretation of the review features of the Act limit the same to the matter of violations and penalties and Congress did not intend to create thereby a roundabout method of enforcement or contesting of the right of the Secretary's representatives to enter a place of business to make inspections required by law. Certainly, the administrative features are not intended to be a means of review of the general validity of a statute empowering the Government to make unannounced, warrantless inspections of a business. Of course, an employer cited for a violation or notified of a proposed penalty may in the course of administrative proceedings raise the question of validity of the section of the Act authorizing same. But this is not the exclusive means of his raising that issue. The employer may do so, and has, challenged the section of the statute and the procedures involved in the in-

---

5. An employer has the duty under § 654 to "furnish to each of his employees employment and a place of employment which are

free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees".

stant litigation. The existence of administrative remedies does not deprive the United States of the right to go into its courts where an employer refused the statutory right to enter a place of business without delay.

## VALIDITY OF UNANNOUNCED, WARRANTLESS, INSPECTIONS WITHOUT PROBABLE CAUSE AS PERMITTED BY § 657(a)

Congress was both aware of and sensitive to the Fourth Amendment right of privacy of a non-public business subject to the Act.[6] Representatives of the Secretary are required to present appropriate credentials to the owner, operator or agent in charge of the business. While no advance notice has to be given (a requirement that would seriously handicap proper enforcement), compliance officials may enter a factory, plant or establishment only at reasonable times during regular working hours in order to conduct inspections and make investigations. They must do so in a reasonable manner. The owner is entitled to have a representative present at all such times. The Regulations provide that the conduct of inspections shall be such as to preclude unreasonable disruption of the operations. 29 C.F.R. § 1903(7)(d).

■ It is clear that the Act confers no right upon any representative of the Secretary to make inspections or searches unconnected with the objects of the legislation. The right to inspect is con-

fined to structures, machines, equipment and material as well as conditions having relevance to those purposes.

■ Viewed in the frame of the regulatory powers of the federal government and the compelling need for unannounced inspections, there is no unreasonable entry under the Fourth Amendment. The necessity of showing probable cause as a requisite would serve to destroy the object of the legislation.[7] In effect, it would require an employee to report a violation in order for any investigation to be made as a predicate to corrective action.

In 1967 the Supreme Court in two cases dealt with the question of warrantless administrative entries by a municipal official for the purpose of regulatory inspection of private commercial premises. See Camara v. Municipal Court of the City and County of San Francisco, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930, and See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L. Ed.2d 943.

In *Camara* the owner of an apartment building was charged with violating the San Francisco Housing Code for refusing City inspectors the right to make a warrantless inspection of the ground floor quarters. The Court held that the owner had a constitutional right to insist that the inspectors obtain a warrant for search and could not be constitutionally convicted for refusing to consent to the inspection, under the facts before it.[8]

---

6. One of the co-authors of the Occupational Safety and Health Act stated prior to the passage thereof that inspectors would have to act in accordance with applicable constitutional protections. Congressional Record, November 24, 1970, p. 38709.

7. In Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 209, 66 S.Ct. 494, 90 L. Ed. 614, the Supreme Court affirmed an order that the Wage and Hour Administrator be given access to specified documents and records sought by a *subpoena duces tecum.* The Court noted that the requirement of probable cause is satisfied by the lower court's determination that Congress properly authorized the investigation and the documents sought are relevant to the inquiry. It

is unnecessary, as in the case of warrants, that there be a specific pending complaint of violation of law.

8. Recently a commentator, citing only *Camara* in support of his conclusion, expressed the view that "the investigatory scheme of [the Occupational Safety and Health Act of 1970], that of searching private premises without consent for the purpose of gathering information which could subject an employer to criminal prosecution, appears to be in conflict with the fourth amendment. . . . ." See Rickner, "The Occupational Safety and Health Act of 1970: An Overview", 4 Cumberland-Samford Law Review (Winter, 1974) 525, 540.

In *See* the conviction was reversed where the defendant refused to permit a representative of the Seattle Fire Department to enter and inspect a locked commercial warehouse without a search warrant and without probable cause to believe that a violation of any municipal ordinance existed therein. The Supreme Court concluded that "administrative entry, without consent, upon the portions of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of a warrant procedure". 387 U.S. at 545, 87 S.Ct. at 1740.

In a case decided on March 14, 1974, the Court of Appeals for the Second Circuit discussed *Camara* and *See* in upholding the warrantless seizure of records from a pharmacy in New York whose owner had been arrested previously for refusing a police officer access. See Terraciano v. Montanye, 2 Cir., 493 F.2d 682. The Court of Appeals held that the seizure was within the limits drawn by the United States Supreme Court in cases involving regulatory searches. The inspector made the examination during business hours and limited himself to the subject matter described in the State statute regulating the pharmacy business. The decision was written by Judge Friendly. The Court said that "The Supreme Court's holdings in Camara v. Municipal Court, 387 U.S. 523 [87 S.Ct. 1727, 18 L.Ed.2d 930] (1967), and See v. City of Seattle, 387 U.S. 541 [87 S.Ct. 1737, 18 L.Ed.2d 943] (1967), that administrative searches were subject to the warrant requirement of the Fourth Amendment were rather promptly narrowed, as, indeed, had been foreshadowed by *Camara* and *See* themselves, 387 U.S. at 533 [87 S.Ct. 1727] and 545–546 [87 S.Ct. 1737], in Colonnade Catering Corp. v. United States, 397 U.S. 72 [90 S.Ct. 774, 25 L. Ed.2d 60] 6 CrL 3063 (1970)."

The Court further said in *Terraciano*:
"While the New York Legislature would do well to consider remodeling its regulatory inspection statutes to incorporate the safeguards contained in the federal act which was adopted in the light of Camara and See, 21 U. S.C. § 880, and indeed has already remodeled them to restrict the right of inspection to representatives of the Health Department, Public Health Law § 3385, rather than all peace officers within the state, ' . . . we do not find the statutes here at issue so seriously deficient as to render unconstitutional this non-forcible inspection and seizure, during business hours, by a narcotics agent, of records of a licensed pharmacist, maintained on the premises as required, relating to narcotics and stimulant or depressant drugs."

The Second Circuit cited United States v. Biswell, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87, which involved the Gun Control Act of 1968. That statute authorizes official entry during business hours of the premises of any firearms or ammunition dealer for the purpose of inspecting or examining records or documents kept as well as firearms or ammunition kept or stored by the dealer at the premises. The Supreme Court there held:

"We have little difficulty in concluding that where, as here, regulatory inspections further urgent federal interest, and the possibilities of abuse and the threat to privacy are not of impressive dimensions, the inspection may proceed without a warrant where specifically authorized by statute. The seizure of respondent's sawed-off rifles was not unreasonable under the Fourth Amendment, and the judgment of the Court of Appeals is reversed, and the case is remanded to that court for further proceedings consistent with this opinion." At 317, 92 S.Ct. at 1597.

In *Terraciano* the Second Circuit noted that in *Colonnade* none of the Supreme Court Justices had disagreed with that portion of the decision on the Circuit level (410 F.2d 197) in which Judge

**1356**

Mansfield referred to the "expansive grants of authority" that existed in *Camara* and *See* which

". . . would permit an inspector, unless a warrant was required, to roam at will through any portion of a dwelling house, in one case, or of commercial property, in the other, without the occupant or owner being able to determine the need for the inspection, its purpose and its lawful limits and an inspection statutorily limited to the business records and goods of industries that are properly subject to intensive regulation in the public interest. In instances of the former type a warrant serves the valuable office of preventing a 'general search'; in the latter, the warrant, which would be issued for the asking, would simply track the statute and would give the person who was the object of the search nothing more than he already had. See 410 F.2d at 201."

In Youghiogheny and Ohio Coal Company v. Morton, 364 F.Supp. 45 (S.D., Ohio) a three-judge court dealt with the validity of the inspection provision of the Federal Coal Mine Health and Safety Act of 1969 (30 U.S.C. § 801) which directs and requires the Secretary of Interior to make warrantless searches of coal mines. The Court said that the "touchstone against which the instant legislative scheme must be tested is whether warrantless searches, in the context of mine safety investigations, are reasonable". While a warrantless, unannounced inspection of a coal mine could not be used for other purposes than was authorized by the statute, the provision therefor was valid. "It is obvious," said the Court, (p. 50) that

". . . large governmental interests are at stake in the regulation of coal mines. The health, safety and the very lives of coal miners are jeopardized when mandatory health and safety laws are violated. Congress had reason to believe that past regulatory experience compelled a more comprehensive statutory scheme which depends, for its successful implementa-

tion, upon frequent, unannounced inspections. Granting the assumptions of this approach, Congress may have had cause to conclude that resort to a judicial officer, prior to every inspection, could tend to frustrate its legislative purpose."

Buckeye Industries is, constitutionally speaking, marching to the beat of an antique drum.

## ORDER

The Secretary's application for an Order compelling inspection and investigation of the place of business of Buckeye Industries, Inc. at Wrightsville, Georgia is granted. Such inspection and investigation may be made without delay, pursuant to the terms of the Occupational Safety and Health Act of 1970.