594 F.2d 1358
 7 O.S.H. Cas.(BNA) 1154, 1979 O.S.H.D. (CCH) P 23,413
SAVINA HOME INDUSTRIES, INC., Petitioner,
v.
SECRETARY OF LABOR and Occupational Safety and Health Review
Commission, Respondents.
 No. 77-1139.
 United States Court of Appeals,
Tenth Circuit.
 Argued Aug. 10, 1978.
Decided March 23, 1979.
 
 Edgar William Dwire, Wichita, Kan., for petitioner Savina Home Industries, Inc.
 William G. Staton, Dept. of Labor, Washington, D. C. (Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health, Michael H. Levin, Counsel for Appellate Litigation, and Allen H. Feldman, Asst. Counsel for Appellate Litigation, U. S. Dept. of Labor, Washington, D. C., with him on the brief), for respondent Secretary of Labor.
 Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.
 McKAY, Circuit Judge.
 
 
 1
 This appeal involves multiple issues of constitutional law. Savina Home Industries, Inc. contends that various aspects of the Occupational Safety and Health Act of 1970,[1] are violative of the Constitution. Savina also challenges the constitutionality of a particular inspection by the Occupational Safety and Health Administration (OSHA). In addition, Savina asserts that a technical error in the Secretary's complaint against it amounted to an infringement of due process.
 
 
 2
 The essential facts relevant to this appeal may be briefly stated. Savina was employed as a general contractor on a commercial construction site in Wichita, Kansas. Various Savina employees were working on the site on January 6, 1975, when an OSHA compliance officer arrived for an inspection. The officer identified himself to Savina's foreman and was accompanied by him on the inspection. Various violations of OSHA safety regulations were identified, and Savina was served with proposed penalties totalling $470. Savina contested the citation, and the Secretary of Labor issued a formal complaint on February 11. Savina answered the complaint, and on September 4, 1975, a hearing was held before an administrative law judge.
 
 
 3
 Savina raised several constitutional arguments in the hearing, in addition to denying the particular violations alleged. The administrative law judge declined to hear the constitutional arguments, observing that the Occupational Safety and Health Review Commission lacked authority to make constitutional determinations on the very Act that gave it authority. After reviewing the proposed violations, the judge affirmed most of them but reduced the penalty to $275. Full review was directed by the Commission itself. On January 3, 1977, the Commission affirmed the order of the administrative law judge. This appeal followed. It is limited to questions of constitutional law. We will consider each of the issues raised, beginning with the one of greatest substance.
 
 FOURTH AMENDMENT CONTENTIONS
 
 4
 With the apparent objective of having this court declare inadmissible the evidence introduced against it in the administrative proceedings, Savina contends that OSHA warrantless inspection procedures violate the Fourth Amendment. While the present appeal was pending, the Supreme Court ruled in Marshall v. Barlow's, Inc., 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), that nonconsensual OSHA inspections undertaken without warrants violate the Constitution. Savina relied on the Barlow's decision in oral argument, asserting that the OSHA search was nonconsensual and that a warrant should have been procured. The Secretary argues that the search was consensual and that, in any event, Savina lacked a legitimate privacy expectation in the construction site. He also contends that Barlow's is not retroactively applicable to the case at bar.
 
 
 5
 The Secretary's assertions regarding consent and expectation of privacy may be correct, but we are unable to verify them. Development of constitutionally significant facts in the record has not been sufficiently elaborate to enable us to decide the case on these grounds.[2] The paucity of the record in this respect is understandable in light of Savina's inability to make constitutional challenges in the administrative proceedings.[3]
 
 
 6
 Our analysis of the Fourth Amendment issue must begin with a consideration of the applicability of the exclusionary rule to the case at bar. Even if the warrant protections of Barlow's are retroactively applicable to pre-Barlow's OSHA inspections,[4] a conclusion that the inspection in this case violated the Fourth Amendment would be of no practical significance in the absence of an exclusionary sanction. If the exclusionary rule were inapplicable, even if a constitutional violation were to be found, no remedy would be available in this case.
 
 
 7
 Exclusionary rule issues were not addressed by the Supreme Court in Barlow's. No "search" had yet taken place, and the suit sought to prevent a warrantless inspection from ever occurring. The Supreme Court ruled that Fourth Amendment protections were applicable to OSHA compliance inspections. In the absence of consent to inspect, the inspector had to secure a warrant. Although it was concerned with Fourth Amendment principles, the Barlow's Court was not required to deal with Fourth Amendment sanctions.
 
 
 8
 The question of the exclusionary rule's general applicability to noncriminal contexts has not been decided by the Supreme Court. It is true that the Court declined to apply the rule in the civil tax case of United States v. Janis, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), but it did so because, under the facts of that case, the deterrence purpose of the rule would not have been furthered by its invocation.[5] In contrast, the Court has approved application of the exclusionary rule in certain civil cases characterized by it as "quasi-criminal."[6] E. g., One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965).
 
 
 9
 Several lower courts have approved of the rule's application in civil and administrative cases. E. g., Midwest Growers Cooperative Corp. v. Kirkemo, 533 F.2d 455, 466 (9th Cir. 1976) (private suit against I.C.C.; dicta that motion to suppress is available to prevent I.C.C. use of illegally seized evidence); Pizzarello v. United States, 408 F.2d 579, 585-86 (2d Cir.) (IRS jeopardy assessment invalid when based on illegally seized evidence), Cert. denied, 396 U.S. 986, 90 S.Ct. 481, 24 L.Ed.2d 450 (1969); Knoll Associates v. FTC, 397 F.2d 530, 533-37 (7th Cir. 1968) (FTC order set aside because based on illegally obtained evidence); Powell v. Zuckert, 125 U.S.App.D.C. 55, 61-62, 366 F.2d 634, 640-41 (1966) (Air Force discharge proceeding remanded with instructions that charges based on illegally obtained evidence not be considered); Rogers v. United States, 97 F.2d 691 (1st Cir. 1938) (action to recover duties on imported liquors; judgment set aside because based on illegal evidence); Smyth v. Lubbers, 398 F.Supp. 777, 794-95 (W.D.Mich.1975) (civil rights action; determination that illegal evidence could not be used in college disciplinary proceedings); United States v. Stonehill, 274 F.Supp. 420, 425-26 (S.D.Cal.1967) (dicta that exclusionary rule should apply in appropriate civil cases; not applied, however, since search in question conducted by foreign officials against whom Fourth Amendment is not directed), Aff'd, 405 F.2d 738 (9th Cir. 1968), Cert. denied, 395 U.S. 960, 89 S.Ct. 2102, 23 L.Ed.2d 747 (1969); Lassoff v. Gray, 207 F.Supp. 843, 846-49 (W.D.Ky.1962) (civil tax assessment held invalid when based solely on evidence illegally seized by IRS).
 
 
 10
 We believe the exclusionary rule would be applicable to OSHA proceedings involving inspections violative of the warrant requirements announced in Barlow's.[7] Such an application would be consistent with the principles announced in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), and subsequent cases. Certainly considerations of preserving judicial integrity and deterring official lawlessness do not become inconsequential simply because an illegal search is conducted by the Department of Labor instead of by the Department of Justice.
 
 
 11
 Our views on the exclusionary rule's applicability to OSHA inspections violative of the Fourth Amendment do not provide an answer to the precise question before us. The question we must answer is whether evidence should be suppressed that was obtained in a pre-Barlow's OSHA inspection inconsistent with the warrant requirements announced in that case. In other words, assuming that the exclusionary rule would be available in any event, the issue is whether the rule is retroactively applicable to a pre-Barlow's inspection.
 
 
 12
 Conventional retroactivity analysis initially considers whether a given constitutional rule is "new" in the sense of clearly departing from prior authorities. See Chevron Oil Co. v. Huson, 404 U.S. 97, 106, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). If it is, then a three-point test is employed to determine whether the new constitutional standard should apply retroactively. This test considers (1) the purpose to be served by the new standard, (2) the extent of reliance by law enforcement officers on the prior standard, and (3) the effect on the administration of justice that a retroactive application would have. Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).
 
 
 13
 In contrast, when the exclusionary rule is involved, retroactivity analysis focuses on whether the purposes underlying the exclusionary rule would be furthered by retroactive application. If neither judicial integrity nor deterrence of official misconduct would be enhanced by retroactive employment of the exclusionary rule, then it will be given prospective application only. See United States v. Peltier, 422 U.S. 531, 539, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975).[8]
 
 
 14
 The Supreme Court observed in Peltier that, for purposes of retroactivity analysis, considerations of judicial integrity and deterrence do not greatly differ. 422 U.S. at 538, 95 S.Ct. 2313. The focus for both is on whether the law enforcement officer reasonably believed his conduct was in accordance with prevailing law. See id. If the officer had such a reasonable belief, his conduct would not reach the level of outrageousness sufficient to invoke concerns of judicial integrity. Id. at 537-38, 95 S.Ct. 2313. See Olmstead v. United States, 277 U.S. 438, 483-85, 48 S.Ct. 564, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting). Neither would the rule's deterrence function be served by imposing exclusionary sanctions when the officer reasonably believed his conduct was constitutional. 422 U.S. at 538, 95 S.Ct. 2313. See Michigan v. Tucker, 417 U.S. 433, 447, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974). This analysis led the Peltier Court to articulate the following standard for retroactive invocation of the exclusionary rule:
 
 
 15
 (E)vidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.
 
 
 16
 422 U.S. at 542, 95 S.Ct. at 2320. The Court noted that every case in which it had considered retroactive application of the exclusionary rule had resulted in a conclusion of prospectivity.[9] 422 U.S. at 535, 95 S.Ct. 2313.
 
 
 17
 Applying this analysis to the case before us, we do not believe the purposes of the exclusionary rule would be served by its application. Prior to the Supreme Court's decision in Barlow's there was no assurance that Section 8(a) would be held unconstitutional. More to the point, at the time of the inspection in this case, the clearest lower court pronouncement regarding Section 8(a)'s constitutionality had been that warrantless OSHA inspections were not violative of the Fourth Amendment. See Brennan v. Buckeye Industries, Inc., 374 F.Supp. 1350 (S.D.Ga.1974).[10] We recognize that this one decision by no means constitutes the sort of "continuous judicial approval" of a constitutional interpretation that was spoken of in Peltier. 422 U.S. at 541, 95 S.Ct. 2313. We nevertheless are of the view that the state of the law at the time of the instant inspection was not such as to charge the inspector with knowledge of the unconstitutionality of a warrantless search.[11] Inasmuch as this actual or constructive knowledge is crucial to a retroactive application of the exclusionary rule under Peltier, we hold that the rule is unavailable here. Accord, Todd Shipyards Corp. v. Secretary of Labor, 586 F.2d 683 (9th Cir. 1978). In the absence of an exclusionary sanction, there is no reason to order further proceedings to determine whether the inspection in this case violated Savina's Fourth Amendment rights.[12]
 
 DUE PROCESS CONTENTIONS
 
 18
 Savina argues that due process was violated because the Secretary's original complaint featured an incorrect Commission docket number and because the Secretary failed to provide Savina with copies of the standards allegedly violated. The Secretary argues that these contentions are without merit because Savina did have notice of the allegations and the standards, and because Savina was able to contest the allegations.
 
 
 19
 It is admitted that the docket number on the original complaint was in error. The incorrect number was the same one designated for a separate pending OSHA case against Savina. The question we must answer is whether this error resulted in insufficient notice and therefore violated due process.
 
 
 20
 We believe Savina was well apprised of the allegations against it. Even though the complaint was technically deficient, it contained precise allegations of violations and clearly identified the location and time of inspection. Savina was notified of the erroneous docket designation about four months prior to the administrative hearing. Furthermore, Savina filed an answer, appeared before the Commission's administrative law judge, and contested the alleged violations.
 
 
 21
 As long as a party to an administrative proceeding is reasonably apprised of the issues in controversy, and is not misled, the notice is sufficient. E. g., Intercontinental Industries, Inc. v. American Stock Exchange, 452 F.2d 935, 941 (5th Cir. 1971), Cert. denied, 409 U.S. 842, 93 S.Ct. 41, 34 L.Ed.2d 81 (1972); L. G. Balfour Co. v. F.T.C., 442 F.2d 1, 19 (7th Cir. 1971); Cella v. United States, 208 F.2d 783, 789 (7th Cir. 1953), Cert. denied, 347 U.S. 1016, 74 S.Ct. 864, 98 L.Ed. 1138 (1954). Savina has not alleged that it was misled by the erroneous docket number. Inasmuch as Savina was informed of the allegations against it and no prejudice has been alleged, we hold that no due process violation has been established.
 
 
 22
 Neither can we conclude that due process was violated because Savina was given insufficient notice of the standards allegedly violated. The standards, which are contained in the Code of Federal Regulations, are a matter of public record. Precise references to the standards in question were made in both the inspector's citation and in the complaint itself. Both the citation and the complaint listed the conditions giving rise to infractions. Furthermore, a closing conference was held with Savina's president in which the infractions in question were discussed in detail. Notice of the standards was adequate.[13]
 
 
 23
 Savina also claims that the OSHA enforcement procedure has a due process-violating "chilling effect" on the employer's right to administrative and judicial review. The argument here is that review is deterred by the Commission's ability to increase the proposed penalties if a citation is challenged. The Secretary acknowledges that the Commission may exercise a penalty-modifying power under 29 U.S.C. § 666(i) (1976), but denies that this violates due process. He also contends that Savina lacks standing to make this claim.
 
 
 24
 This court has already rejected these due process contentions in Clarkson Construction Co. v. OSHRC, 531 F.2d 451, 456 (10th Cir. 1976).[14] We do not believe Savina has standing to ask this court to reconsider its position.
 
 
 25
 In order to challenge a statutory scheme, the challenger must show that he has been injured by it. See, e. g., Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). Savina has not shown that here. Savina has not been penalized by an increased penalty; indeed, the proposed penalty was reduced by the Commission. We are given no indication that a penalty for bad faith appeal is contemplated. Savina has vigorously pursued available review procedures and has not hesitated to challenge the validity of the citation. Cf., Dan J. Sheehan Co. v. OSHRC, 520 F.2d 1036, 1040 (5th Cir. 1975) (petitioner sufficiently aggrieved to raise "chilling effect" issue where failed to contest citation), Cert. denied, 424 U.S. 965, 96 S.Ct. 1458, 47 L.Ed.2d 731 (1976). Savina has not provided this court with any indication that the alleged chilling effect influenced its conduct in any respect. Under these circumstances, we conclude that Savina lacks standing to raise this issue. See Lake Butler Apparel Co. v. Secretary of Labor, 519 F.2d 84, 86-87 (5th Cir. 1975); Atlas Roofing Co. v. OSHRC, 518 F.2d 990, 1012-13 (5th Cir. 1975), Aff'd, 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977).
 
 SIXTH AMENDMENT CONTENTIONS
 
 26
 Savina contends that the civil penalty assessed against it under OSHA Section 17(c), 29 U.S.C. § 666(c) (1976), is penal in nature and was imposed in violation of various Sixth Amendment protections. Savina identifies the rights of confrontation, cross-examination, and trial by jury as ones infringed by the Act.
 
 
 27
 We do not believe Savina has standing to challenge the statutory framework on confrontation clause grounds. Savina's accuser, the OSHA compliance officer, was known by the defendant and participated in the administrative hearing. Inasmuch as the officer, the Secretary's sole witness, was actually cross-examined in the administrative hearing, we find that Savina lacks standing on that issue as well.
 
 
 28
 We are unconvinced by Savina's characterization of the administrative proceeding as a criminal one to which Sixth Amendment jury trial protections apply. This court has previously rejected the argument that OSHA civil penalty assessment proceedings violate Sixth Amendment protections. Clarkson Construction Co. v. OSHRC, 531 F.2d 451, 455 (10th Cir. 1976). Other circuits have agreed. Mohawk Excavating, Inc. v. OSHRC, 549 F.2d 859, 862-63 (2d Cir. 1977); Brennan v. Winters Battery Manufacturing Co., 531 F.2d 317, 325 (6th Cir. 1975), Cert. denied, 425 U.S. 991, 96 S.Ct. 2202, 48 L.Ed.2d 815 (1976); Beall Construction Co. v. OSHRC, 507 F.2d 1041, 1044 (8th Cir. 1974). See Atlas Roofing Co. v. OSHRC, 430 U.S. 442, 460 n.15, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977). Moreover, a jury trial "would be incompatible with the whole concept of administrative adjudication." Pernell v. Southall Realty, 416 U.S. 363, 383, 94 S.Ct. 1723, 1733, 40 L.Ed.2d 198 (1974).
 
 UNLAWFUL DELEGATION CONTENTION
 
 29
 Savina next urges that the Act's authorization of administrative rulemaking and enforcement powers amounts to an unconstitutional delegation of legislative and judicial authority. Savina seems to base its argument largely on the premise that criminal prosecution is really at issue. We have already refused to adopt the position that the Act's civil penalty proceedings are actually criminal ones. In any event, this court has aligned itself with other circuits in rejecting the argument asserted here. Clarkson Construction Co. v. OSHRC, 531 F.2d 451, 456 (10th Cir. 1976). See Bloomfield Mechanical Contracting, Inc. v. OSHRC, 519 F.2d 1257, 1263 (3d Cir. 1975); Frank Irey, Jr., Inc. v. OSHRC, 519 F.2d 1200, 1219 (3d Cir. 1975) (en banc), Aff'd,430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1976); Lake Butler Apparel Co. v. Secretary of Labor, 519 F.2d 84, 88-89 (5th Cir. 1975); Beall Construction Co. v. OSHRC, 507 F.2d 1041, 1045 (8th Cir. 1974); McLean Trucking Co. v. OSHRC, 503 F.2d 8, 11 (4th Cir. 1974).
 
 
 30
 Federal courts have long recognized as constitutionally valid broad delegations of adjudicatory and rulemaking authority to administrative agencies. See, e. g., United States v. Southwestern Cable Co., 392 U.S. 157, 88 S.Ct. 1994, 20 L.Ed.2d 1001 (1968); F.C.C. v. RCA Communications, Inc., 346 U.S. 86, 73 S.Ct. 998, 97 L.Ed. 1470 (1953); Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944). Savina's general allegations have not directed us to any OSHA administrative procedures that cause us to question the Act's constitutionality on unlawful delegation grounds.
 
 VAGUENESS CONTENTION
 
 31
 Finally, Savina asserts that the general duty clause of the Act imposes an unconstitutionally vague standard of conduct on employers.[15] We need not reach the merits of this contention; Savina was not charged with violating the general duty clause. Instead, the company was cited for violating specific regulatory standards promulgated under the Act and binding on employers according to 29 U.S.C. § 654(a)(2) (1976). Because Savina also lacks standing to raise this issue, we decline to consider it.
 
 
 32
 The Order of the Commission is affirmed and enforced.
 
 
 
 [1]
 29 U.S.C. §§ 651-678 (1976)
 
 
 [2]
 For example, the record is silent regarding what privacy expectations, if any, Savina had in the construction site generally or in particular portions of the site inspected. We do not know, for instance, whether the white box containing the deficient crowbar was closed to the public. In like manner, we are not able to say, as a matter of law, that the record shows valid consent to the inspection. Savina was simply not able to develop its Fourth Amendment contentions in the administrative proceedings. See note 3 Infra
 
 
 [3]
 The Secretary argues that Savina's Fourth Amendment challenge is not properly before the court because Savina failed to raise the lack of consent contention in the administrative proceedings. The Secretary finds support for his position in 29 U.S.C. § 660(a) (1976), which provides that "(n)o objection that has not been urged before the Commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." We are not persuaded by this argument. Savina did allege before the Commission's administrative law judge that the inspection was conducted in violation of the Fourth Amendment. However, the judge declined to consider any constitutional attacks on the Act's provisions, observing that "it has been the position of the Commission and its Judges that we do not possess the jurisdiction to pass on Constitutional questions." Record, vol. 2, at 11. Savina thus had no opportunity to develop its Fourth Amendment argument in the administrative proceedings. Under these circumstances Savina's contention that the inspection violated the Fourth Amendment was sufficient "objection" to permit the issue to be considered on appeal
 
 
 [4]
 The Supreme Court's remanding of recent cases for consideration in light of Barlow's has led a panel of the Ninth Circuit to conclude that the warrant requirements of that case have retroactive application. Todd Shipyards Corp. v. Secretary of Labor, 586 F.2d 683, 688-89 (9th Cir. 1978). See, e. g., New Orleans Pub. Serv. Inc. v. United States, 436 U.S. 941, 98 S.Ct. 2841, 56 L.Ed.2d 783 (1978); Mississippi Power & Light Co. v. United States, 436 U.S. 942, 98 S.Ct. 2841, 56 L.Ed.2d 783 (1978); Consolidation Coal Co. v. United States, 436 U.S. 942, 98 S.Ct. 2841, 56 L.Ed.2d 783 (1978)
 
 
 [5]
 The Janis opinion did not emphasize the civil nature of the tax assessment proceeding. Rather, the Court reasoned that the deterrence function of the rule would not be served by suppressing evidence illegally seized by a "sovereign" different from the one seeking to use it. Of course, this rationale does not bar invocation of the rule in cases of "intrasovereign" violations, such as Pizzarello v. United States, 408 F.2d 579 (2d Cir.), Cert. denied, 396 U.S. 986, 90 S.Ct. 481, 24 L.Ed.2d 450 (1969). See 428 U.S. at 456 & n.32, 96 S.Ct. 3021; 1977 B.Y.U.L.Rev. 211, 227. Indeed, the analysis in Janis indicates that the deterrence rationale would have significance in an "intrasovereign" case like the one before us
 
 
 [6]
 The term "quasi-criminal" has been defined as follows:
 Laws that provide for punishment but are civil rather than criminal in form have sometimes been labeled "quasi-criminal" by the Supreme Court. These laws, broadly speaking, provide for civil money penalties, forfeitures of property, and the punitive imposition of various disabilities, such as the loss of professional license or public employment.
 Clark, Civil and Criminal Penalties and Forfeitures: A Framework for Constitutional Analysis, 60 Minn.L.Rev. 379, 381 (1976) (footnotes omitted).
 Under this definition an argument could be made that OSHA civil penalties constitute quasi-criminal sanctions.
 
 
 [7]
 We note that the Ninth Circuit has recently suggested the contrary. Todd Shipyards Corp. v. Secretary of Labor, 586 F.2d 683, 689 (1978)
 
 
 [8]
 The Peltier retroactivity analysis does not emphasize the "new" rule requirement of the conventional approach. See United States v. Peltier, 422 U.S. at 545, 95 S.Ct. 2313 (Brennan, J., dissenting). In employing the Peltier approach, lower courts have not invoked the "sharp break" test common to usual retroactivity analysis. See United States v. Berry, 571 F.2d 2, 3 (7th Cir.), Cert. denied, --- U.S. ----, 99 S.Ct. 129, 58 L.Ed.2d 138 (1978); United States v. Reda, 563 F.2d 510 (2d Cir. 1977) (per curiam), Cert. denied, 435 U.S. 973, 98 S.Ct. 1617, 56 L.Ed.2d 65 (1978); United States v. Montgomery, 558 F.2d 311 (5th Cir. 1977) (per curiam). The reason for de-emphasizing the new rule requirement in the exclusionary rule context seems plain enough. In a proceeding in which the government seeks to use "seized" evidence against a defendant, a conclusion that the Fourth Amendment has been violated is essentially meaningless without the availability of an exclusionary sanction. If the purposes behind the sanction would themselves be unfulfilled by the sanction's application, then, in view of the high costs of suppressing evidence, there is no reason to apply it. Thus the crucial focus in these cases is not on the intricacies of a new rule standard but on whether application of the exclusionary rule would serve its underlying purposes
 
 
 [9]
 Indeed, one commentator, considering the Peltier Court's plenary treatment of retroactivity in that case, noted that it "was a fourth amendment case . . . and thus might be thought A fortiori to call for non-retroactive application." Beytagh, Ten Years of Non-Retroactivity: A Critique and a Proposal, 61 Va.L.Rev. 1557, 1592 (1975)
 
 
 [10]
 The inspection in this case occurred on January 6, 1975. The court's opinion in Brennan v. Buckeye Industries, Inc., 374 F.Supp. 1350 (S.D.Ga.1974), had been entered on April 24, 1974
 Subsequent to the inspection in this case, several other courts took an approach contrary to the Buckeye opinion. Some courts took the position that Section 8(a) carried with it an implicit warrant requirement. Marshall v. Reinhold Constr., Inc., 441 F.Supp. 685 (M.D.Fla.1977); Morris v. United States Dep't of Labor, 439 F.Supp. 1014 (S.D.Ill.1977); Marshall v. Chromalloy Am. Corp., 433 F.Supp. 330 (E.D.Wis.1977). Other tribunals took the view that Section 8(a), or warrantless searches conducted under Section 8(a), violated the Fourth Amendment. Empire Steel Mfg. Co. v. Marshall, 437 F.Supp. 873 (D.Mont.1977); Usery v. Centrif-Air Mach. Co., 424 F.Supp. 959 (N.D.Ga.1977); Barlow's Inc. v. Usery, 424 F.Supp. 437 (D.Ida.1976), Aff'd, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978).
 For a comprehensive treatment of the state of the law prior to the Supreme Court's decision in Barlow's, see Note, Warrantless Nonconsensual Searches under the Occupational Safety and Health Act of 1970, 46 Geo.Wash.L.Rev. 93 (1977). Our opinion in In re Carlson, 580 F.2d 1365, 1378-81 (10th Cir. 1978) discusses "probable cause" issues in the OSHA context in light of the Barlow's decision.
 
 
 [11]
 Barlow's was a case of first impression. It extended Fourth Amendment protections into a new area by declaring unconstitutional a Congressional enactment which enactment had been relied on by OSHA personnel as they conducted administrative inspections. Barlow's also clarified the relationship between Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) and See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), and such apparently narrowing decisions as United States v. Biswell, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) and Colonnade Catering Corp. v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970). The implications of these last two cases had caused at least one lower court to uphold the constitutionality of warrantless OSHA inspections. Brennan v. Buckeye Industries, Inc., 374 F.Supp. 1350 (S.D.Ga.1974). Subsequent cases took contrary approaches. See note 10 Supra
 
 
 [12]
 Had this case involved a post-Barlow's inspection, under our view of the exclusionary rule's prospective availability, it would have been appropriate to remand for development of facts on such questions as privacy expectation and consent facts insufficiently elaborated in the present record. In such a circumstance, it would seem best to allow the Commission to conduct further proceedings to fill in the crucial gaps in the record. Since this situation is not before us, we leave to another day a discussion of proper procedures for augmenting the record with findings of constitutionally significant facts
 
 
 [13]
 Savina's contention that due process was violated by OSHA's failure to provide the administrative law judge with copies of the standards also fails. The record reveals that the request had been made for the convenience of the judge, not for purposes of giving notice to Savina. Record, vol. 2, at 12-13. The judge also observed:
 Now I do not, however, feel that in view of the fact that the Act has been in force since 1970, that any employer in these United States has a legitimate ground for contest or complaint that he has been held in ignorance of the OSHA Act or the standards that have been promulgated by the Department of Labor pursuant to that Act. And he has a duty and responsibility to familiarize to become familiar with those standards.
 Id. at 13. We are in substantial agreement with this viewpoint.
 
 
 [14]
 Accord, Dan J. Sheehan Co. v. OSHRC, 520 F.2d 1036, 1040-42 (5th Cir. 1975), Cert. denied, 424 U.S. 965, 96 S.Ct. 1458, 47 L.Ed.2d 731 (1976). See California Stevedore and Ballast Co. v. OSHRC, 517 F.2d 986, 988-89 (9th Cir. 1975). Cf., Long Mfg. Co. v. OSHRC, 554 F.2d 903, 907-08 (8th Cir. 1977) (subsequent increase in penalty is not legal prejudice)
 
 
 [15]
 The clause provides:
 Each employer . . . shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees. . . .
 29 U.S.C. § 654(a)(1) (1976).