584 F.2d 638
 6 O.S.H. Cas.(BNA) 1929, 1978 O.S.H.D. (CCH) P 23,057
Ray MARSHALL, Secretary of Labor, Petitioner,
v.
PITTSBURGH-DES MOINES STEEL COMPANY and Occupational Safety
and Health Review Commission, Respondents.
Ray MARSHALL, Secretary of Labor, Petitioner,
v.
WHEELING-PITTSBURGH STEEL CORPORATION and Wheeling
Corrugating Company, Division of
Wheeling-Pittsburgh Steel Corporation,
and Occupational Safety and
Health Review
Commission,
Respondents.
 Nos. 77-1809, 77-1810.
 United States Court of Appeals, Third Circuit.
 Argued May 2, 1978.
Decided Sept. 22, 1978.
 
 Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health, Michael H. Levin, Counsel for Appellate Litigation, Allen H. Feldman, Associate Counsel for Appellate Litigation, Nancy L. Southard, Atty., U. S. Dept. of Labor, Washington, D. C., for petitioner Secretary of Labor.
 Leon G. Krasinski, Counsel, Nancy Jane Palmer, Associate Counsel, Pittsburgh-Des Moines Steel Co., Neville Island, Pittsburgh, Pa., for respondent Pittsburgh-Des Moines Steel Co.
 Henry J. Wallace, Jr., Patrick W. Ritchey, Reed Smith Shaw & McClay, Pittsburgh, Pa., for respondent Wheeling-Pittsburgh Steel Corp.; George Raynovich, Wheeling-Pittsburgh Steel Corp., Pittsburgh, Pa., of counsel.
 Allen Sachsel, Appellate Section, Civil Div., U. S. Dept. of Justice, Washington, D. C., for respondent Occupational Safety and Health Review Com'n.
 Before SEITZ, Chief Judge, and VAN DUSEN and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Chief Judge.
 
 
 1
 Before us are two petitions for review filed by the Secretary of Labor pursuant to 29 U.S.C. § 660(b), asking this court to set aside certain orders of the Occupational Safety and Health Review Commission. In separate proceedings, the Commission vacated citations issued by the Secretary to respondents Pittsburgh-Des Moines Steel Company (PDM) and Wheeling-Pittsburgh Steel Company for alleged violations of two occupational safety and health standards relating to overhead and gantry cranes.
 
 
 2
 With respect to existing equipment, the overhead and gantry crane regulations provide that "cranes constructed before August 31, 1971, should be modified to conform to (these) design specifications by February 15, 1972, unless it can be shown that the crane cannot feasibly or economically be altered and that the crane substantially complies with the requirements of (these regulations)." 29 C.F.R. § 1910.179(b)(2) (1977). Because the regulation indicates that older cranes "should" be modified, the Commission held that the standards were merely advisory with respect to the cited cranes, which were installed before the standards became effective. It is that ruling that the Secretary challenges here.
 
 I.
 
 3
 The Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 Et seq., was enacted "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions . . . ." 29 U.S.C. § 651(b). To that end, the Act authorized the Secretary of Labor "to set mandatory occupational safety and health standards applicable to businesses affecting interstate commerce," and created the Occupational Safety and Health Review Commission "for carrying out adjudicatory functions (of the Act)." 29 U.S.C. § 651(b)(3). In order to provide for implementation of the Act as soon as practicable, the Secretary was authorized to "promulgate as an occupational safety or health standard any national consensus standard, and any established Federal standard," within two years of the effective date of the Act, without regard to the rule-making provisions of the Administrative Procedure Act, 5 U.S.C. § 500 Et seq., 29 U.S.C. § 655(a). The term "national consensus standard" is defined in the Act as:
 
 
 4
 any occupational safety and health standard or modification thereof which (1) has been adopted and promulgated by a nationally recognized standards-producing organization under procedures whereby it can be determined by the Secretary that persons interested and affected by the scope or provisions of the standard have reached substantial agreement on its adoption, (2) was formulated in a manner which afforded an opportunity for diverse views to be considered and (3) has been designated as such a standard by the Secretary, after consultation with other appropriate Federal agencies.
 
 
 5
 29 U.S.C. § 652(9).
 
 
 6
 The Act became effective on April 28, 1971, and one month later the Secretary promulgated occupational safety and health standards as a new Part 1910 of the Code of Federal Regulations. 36 Fed.Reg. 10466 (May 29, 1971). Subpart N of the new OSHA regulations dealt with "Materials Handling and Storage." As the section of this subpart dealing with overhead and gantry cranes, the Secretary adopted the pertinent safety code of the American National Standards Institute (ANSI) as a national consensus standard. 29 C.F.R. §§ 1910.179, 1910.183; 36 Fed.Reg. 10466, 10617-22, 10629 (May 29, 1971).
 
 
 7
 The OSHA standards that respondents allegedly violated were taken verbatim from Chapter 2-1 of the ANSI Code, sections 2-1.7.7a (guards for moving parts) and 2-1.9.2a (electrical equipment).[1] Both regulations use the word "shall," characterizing them as mandatory rules of the ANSI Code as defined by Section V of the Code's Introduction:
 
 
 8
 Mandatory rules of this Code are characterized by the use of the word "shall." If a rule is of an advisory nature it is indicated by the use of the word "should" or is stated as a recommendation.
 
 
 9
 At the core of this dispute is 29 C.F.R. § 1910.170(b)(2) (hereinafter "(b) (2)"), which was derived from Section IV of the Introduction to the ANSI Code:
 
 Section IV New and Old Installations
 
 10
 After the date on which this Code becomes effective, all new construction and installation shall conform to its rules. Equipment installed prior to that date should be modified to conform to its rules unless administrative or regulatory authorities deem that the equipment as installed cannot economically be altered and that the equipment substantially complies with the requirements of the Code.
 
 
 11
 The Commission viewed the use of the word "should" with reference to the modification of existing cranes as making that rule advisory for cranes installed prior to the effective date of the ANSI Code.
 
 
 12
 When the Secretary promulgated the ANSI Code as a national consensus standard, not all of the ANSI rules were adopted as OSHA standards. In his statement accompanying the newly-promulgated OSHA regulations, the Secretary stated that the "national consensus standards contain only mandatory provisions of the standards promulgated by (ANSI). The standards of ANSI . . . may also contain advisory provisions and recommendations the adoption of which by employers is encouraged, but they are not adopted in Part 1910." 36 Fed.Reg. 10466 (May 29, 1971). In several instances the Secretary replaced ANSI's "should" with a mandatory "shall." Compare ANSI §§ 2-1.7.2a (bridge bumpers) and 2-1.7.3a (trolley bumpers) With 29 C.F.R. §§ 1910.179(e)(2)(i) and (e)(3)(i). Most importantly, (b)(2), as originally promulgated, provided that pre-existing cranes "shall be modified . . .." 36 Fed.Reg. 10618 (May 29, 1971).
 
 
 13
 Furthermore, although ten regulations retained "should" from their ANSI prototypes,[2] the Secretary deleted Section V of the ANSI Code's Introduction. That section provided for the distinction, in terms of compliance, between "shall" ANSI rules and "should" ANSI rules. In view of the Secretary's contemporaneous statement that only mandatory rules were adopted in the original Part 1910, the deletion of ANSI Section V might indicate that all of the promulgated OSHA standards were intended to be mandatory, regardless of their wording. This construction comports with the statute's grant of authority to the Secretary "to set Mandatory occupational safety and health standards . . . ." 29 U.S.C. § 651(b)(3) (emphasis supplied).
 
 
 14
 Ten weeks after his original promulgation of Part 1910, the Secretary amended those standards as a result of subsequent review that "pointed up the need for some clarifications, corrections, and changes in effective dates of standards." 36 Fed.Reg. 15101 (Aug. 13, 1971). Specifically, (b)(2) was revised "in order to give some time for the modification of existing overhead and gantry cranes, and to reflect accurately the (ANSI) standard from which the provision is derived." Id. With the exception of the setting of dates for modification of existing cranes, (b)(2), as amended, substantially tracks the language of Section IV of the ANSI Code Introduction:
 
 
 15
 New and existing equipment. All new overhead and gantry cranes constructed and installed on or after August 31, 1971, shall meet the design specifications of the American National Standard Safety Code for Overhead and Gantry Cranes, ANSI B30.2.0-1967. Overhead and gantry cranes constructed before August 31, 1971, should be modified to conform to those design specifications by February 15, 1972, unless it can be shown that the crane cannot feasibly or economically be altered and that the crane substantially complies with the requirements of this section.
 
 
 16
 36 Fed.Reg. 15106 (Aug. 13, 1971). The term "design specifications" was substituted for the term "rules" in Section IV of the ANSI Code Introduction. In making these changes in the wording of the OSHA standards, the Secretary noted that adherence to the rule-making requirements of the Administrative Procedure Act, 5 U.S.C. § 553, was "unnecessary because of the nature of the amendments, and impracticable, because of the need to give as much advance notice as possible of the changes before August 27, 1971, when the standards in Part 1910 become effective." 36 Fed.Reg. 15101 (Aug. 13, 1971).
 
 
 17
 The citations before us were issued under these amended provisions. The Secretary charged that PDM operated an overhead traveling crane with unguarded moving parts, in violation of 29 C.F.R. § 1910.179(e)(6)(i). Following an evidentiary hearing, the administrative law judge upheld the citation. On review, the Commission reversed. Secretary of Labor v. Pittsburgh-Des Moines Steel Corp., OSAHRC Docket No. 13708, 5 OSHC 1420 (BNA) (May 5, 1977). The Commission majority found that (b)(2), as derived from Section IV of the ANSI Code's Introduction, made compliance with ANSI "design specifications," including (e)(6)(i), advisory for cranes constructed prior to August 31, 1971. The dissenting Commissioner argued that the proscription against exposed moving parts was not a design specification, and therefore was not controlled by (b) (2).
 
 
 18
 Soon thereafter, the Commission relied on its PDM decision in vacating complaints against Wheeling-Pittsburgh. The Secretary alleged that electrical equipment on some of Wheeling-Pittsburgh's cranes violated 29 C.F.R. § 179(g) (2)(i). One crane allegedly violated both (e)(6)(i) and (g)(2)(i). Again, the Commission held that OSHA standards did not require that pre-existing cranes be brought into compliance, Secretary of Labor v. Wheeling-Pittsburgh Steel Corp., OSAHRC Docket Nos. 10611, 11327, 13327, 13320 & 14366, 5 OSHC 1495 (BNA) (May 12, 1977).
 
 
 19
 It is these two decisions that we examine in this appeal.
 
 II.
 
 20
 The Secretary argues that (b)(2) does not control the application of the pertinent OSHA standards to the cited cranes, and, even assuming that (b)(2) does control the applicability of §§ 1910.179(e)(6)(i) and (g)(2)(i), that the regulatory history of that standard and its plain meaning require mandatory application. In reply, respondents contend, Inter alia, that if (b)(2) is given mandatory application, then the Secretary exceeded his statutory authority in promulgating that provision as a national consensus standard since the ANSI source standard was merely advisory with respect to existing cranes.
 
 A.
 
 21
 The second sentence of (b)(2) provides that cranes installed prior to August 31, 1971 "should be modified to conform to (ANSI) design specifications . . . ." In view of the Secretary's failure to adopt a number of ANSI rules which clearly are concerned with crane design, he contends that the term "design specifications" refers to those unadopted ANSI rules. This argument ignores the use of "design specifications" in that portion of (b)(2) referring to new cranes. The Secretary is placed in the anomalous position of arguing either that new crane construction must comply with regulations that he did not adopt or that the term "design specifications" has two different meanings in the same regulation.
 
 
 22
 Alternatively, the Secretary contends that 29 C.F.R. §§ 1910.179(e)(6)(i) and (g)(2)(i), which require the guarding or enclosure of exposed moving parts and electrical equipment are not "design specifications" since they are not concerned with the crane's basic design, but rather with components that may be installed easily after the crane is constructed. The Commission concluded that the term "design specifications" replaced the reference to ANSI "rules" in Section IV of the Introduction to the Code, and therefore corresponded to the construction and installation rules found in ANSI chapter 2-1. Thus, the Commission reasoned, §§ 1910.179(e)(6)(i) and (g)(2)(i), which were derived from ANSI construction and installation rules, are "design specifications" as that term is used in (b)(2).
 
 
 23
 This court has held that the Secretary's interpretation of a national consensus standard is not as persuasive as it might be were the regulation a product of formal rule-making. See Bethlehem Steel Corp. v. Occupational Safety and Review Comm'n, 573 F.2d 157, 160 (3d Cir. 1978). We need not determine whether, as a general matter, the Commission's interpretation of such a standard is entitled to deference over the Secretary's, See id. at 160 n.4, for here, as in Bethlehem Steel, we can rely on the "plain wording of the standard." Id. at 160.
 
 
 24
 First, the only regulatory explication offered for the term "design specifications" is a general reference to the ANSI Code. The standards promulgated by the Secretary do not circumscribe the term more closely. Furthermore, (b)(2) was derived directly from Section IV of the ANSI Code's Introduction, which clearly was not limited to design-oriented standards. Thus we agree with the Commission that §§ 1910.179(e)(6)(i) and (g)(2)(i) are "design specifications" within the ambit of (b)(2).
 
 B.
 
 25
 Based on its interpretation of "design specifications" the Commission concluded that (b)(2) rendered §§ 1910.179 (e)(6)(i) and (g)(2)(i) advisory with respect to existing cranes. The Secretary contends that the regulatory history and plain meaning of (b)(2) indicate that it is mandatory and not advisory.
 
 
 26
 The Secretary clearly intended the provision to require compliance for existing cranes. As originally promulgated, (b)(2) provided that older cranes "shall be modified." 36 Fed.Reg. 10618 (May 29, 1971). At that time the Secretary asserted that he was adopting only mandatory rules. Id. at 10466. In amending (b)(2) to its present form, the Secretary indicated that he was making no substantive changes in the standard. 36 Fed.Reg. 15101 (Aug. 13, 1971). Rather, he amended (b)(2) "to give some time for the modification of existing . . . cranes." Id. at 15106. Furthermore, the Secretary established February 15, 1972, as the date by which existing cranes had to comply.
 
 
 27
 While (b)(2) apparently was intended to set mandatory standards for existing cranes, the evidence is equally persuasive that its prototype, Section IV of the ANSI Code's Introduction, was merely advisory as it applied to such cranes. ANSI Section V states that advisory rules are indicated by the word "should." ANSI Section IV clearly states that existing cranes "should be modified." Admittedly, Section IV's use of "should . . . unless" may indicate an intent to make the rules compulsory for all cranes. We note, however, that of the eight other ANSI rules that incorporate such conditional language, seven use the mandatory "shall . . . unless" "shall not . . . unless," or "shall not . . . except." The only conditional ANSI rule that uses the "should . . . unless" formula is Section 2-3.3 (signals), which is advisory in its entirety. It seems that the ANSI B30 Committee that drafted Section IV and the rest of the Safety Code for Overhead and Gantry Cranes realized the significance of the advisory "should" employed therein, and intended Section IV as an advisory rule even though it was coupled with the conditional "unless."
 
 
 28
 Thus, while we agree with the Secretary that he intended to make (b)(2) mandatory in its entirety, we must examine his authority to promulgate such a requirement in light of the advisory nature of the ANSI rule.
 
 C.
 
 29
 The Secretary's promulgative authority under the Act is set out in29 U.S.C. § 655. Generally, the Secretary must follow rule-making procedures when promulgating OSHA standards. See 29 U.S.C. §§ 655(b), 655(c). Section 655(a), however, offers the Secretary a limited opportunity to bypass rule-making in the case of national consensus standards or established federal standards. Most significantly, a national consensus standard must be the product of "substantial agreement" among "persons interested and affected" by the standard. 29 U.S.C. § 652(9).
 
 
 30
 The Secretary promulgated (b)(2) as a national consensus standard pursuant to 29 U.S.C. § 655(a). As indicated above, the Secretary has attempted to apply that standard mandatorily against pre-existing cranes. We have not found, however, that the framers of the ANSI Code were in substantial agreement that Section IV was mandatory; thus the Secretary could not adopt that rule as a national consensus standard and give it mandatory effect.
 
 
 31
 The United States Court of Appeals for the Tenth Circuit agrees. In Usery v. Kennecott Copper Corp., 577 F.2d 1113 (10th Cir. 1977), the court was confronted with an OSHA standard using the mandatory "shall," but derived from an ANSI rule using the advisory "should." The court held that promulgation of the advisory standard as a mandatory rule was inconsistent with the Secretary's limited authority to adopt a national consensus standard. Id., at 1117.
 
 
 32
 We perceive no difference between the Secretary's change of wording, disapproved in Kennecott Copper, and his change in interpretation, confronting us here. The Secretary altered the meaning of the ANSI rule in promulgating it as an OSHA standard. The Secretary, of course, is entitled to some promulgative leeway in setting standards under the Act. That leeway, however, is narrow where he bypasses rule-making. Changing an advisory standard to one with mandatory application was not so insubstantial as to fall within the Secretary's latitude under 29 U.S.C. § 655(a). We note that the Commission uniformly has held that advisory ANSI rules cannot be transformed into mandatory OSHA standards via section 655(a). See, e. g., Secretary v. Brooks Scanlon, Inc., 10 OSAHRC 51 (July 11, 1974); Accord Secretary v. Oberhelman-Ritter Foundry, Inc., 3 OSAHRC 1212 (July 31, 1973).
 
 
 33
 The Secretary argues that such a narrow construction of his authority is inconsistent with the remedial purposes of the Act and improperly restricts him to the interpretation given the national consensus standard by the private authority. But the overriding ameliorative goals of the statute cannot justify circumvention of its procedural requirements. Under Section 655(b) the Secretary, through rule-making, may give these standards the mandatory effect he desires.
 
 III.
 
 34
 We hold that where, as here, the Secretary derives an OSHA standard from an advisory private rule, he exceeds his authority under 29 U.S.C. § 655(a) to the extent that he gives that standard mandatory effect. Thus, under 29 C.F.R. § 1910.179(b)(2) the Secretary could not enforce the ANSI "design specifications" included in 29 C.F.R. § 1910.179 against the owners of cranes constructed and installed prior to August 31, 1971. Because the Commission found that all the cited cranes in both the PDM and the Wheeling-Pittsburgh proceedings were installed before that date, the guarding requirements of 29 C.F.R. §§ 1910.179(e)(6)(i) and (g)(2)(i) are merely advisory for those cranes. The Commission did not err in vacating the OSHA citations issued to respondent companies.
 
 
 35
 The petitions for review will be denied.
 
 
 
 [1]
 2-1.7.7 Guards for Moving Parts
 a. Exposed moving parts such as gears, set screws, projecting keys, chains, chain sprockets and reciprocating components which might constitute a hazard under normal operating conditions shall be guarded. (codified at 29 C.F.R. § 1910.179(e)(6)(i))
 2-1.9.2 Equipment
 a. Electrical equipment shall be so located or enclosed that live parts will not be exposed to accidental contact under normal operating conditions. (codified at 29 C.F.R. § 1910.179(g)(2)(i))
 
 
 [2]
 Advisory ANSI rules were promulgated as OSHA standards at 29 C.F.R. §§ 1910.179(c)(1)(iii) (cab location), 1910.179(c)(3) (fire extinguisher), 1910.179(d)(1)(i) (location of footwalks), 1910.179(d)(1)(ii) (same), 1910.179(d)(2)(iii) (construction of footwalks), 1910.179(d)(2)(iv) (same), 1910.179(f)(4)(ii) (brakes for trolleys and bridges), 1910.179(f)(5)(ii) (application of trolley brakes), 1910.179(j)(3)(ix) (periodic inspection), 1910.179(j)(4)(iii) (cranes not in regular use), 1910.179(k)(2) (rated load test), 1910.179(L)(2)(i)(f) (maintenance procedure)