**Raymond J. DONOVAN, Secretary of Labor, Petitioner,**

v.

**FEDERAL CLEARING DIE CASTING COMPANY and Occupational Safety and Health Review Commission, Respondents.**

No. 82–1174.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 17, 1982.

Decided Dec. 9, 1982.

Rehearing and Rehearing En Banc Denied April 12, 1983.

See also D.C., 484 F.Supp. 215 and 7 Cir., 655 F.2d 793.

Charles I. Hadden, U.S. Dept. of Labor, Washington, D.C., for petitioner.

Robert D. Moran, Vorys, Sater, Seymour & Pease, Washington, D.C., for respondents.

Before CUMMINGS, Chief Judge, PELL, Circuit Judge, and DUMBAULD,* Senior District Judge.

CUMMINGS, Chief Judge.

The Secretary of Labor has asked us to review the decision of an administrative law judge (ALJ) of the Occupational Safety and Health Review Commission (the Commission) granting respondent Federal Clearing Die Casting Company's (Federal) motion to suppress the evidence and dismiss the proceedings before him on the ground that the evidence had been obtained through the use of a search warrant we held invalid in *Donovan v. Federal Clearing Die Casting Co.,* 655 F.2d 793 (1981) for want of probable cause. We reverse the order of dismissal.[1]

On January 7, 1980, Federal employee Natalio Alamillo severed his hands while operating a hydraulic punch press on Federal's premises. Articles concerning the acci-

dent appeared in the Chicago *Sun-Times* on January 9 and 10. Pursuant to the Department of Labor's Occupational Safety and Health Field Operations Manual, IV–B, XVI–C2c(2), the Occupational Safety and Health Administration (OSHA) tried to conduct a safety inspection of Federal's workplace on January 10 but Federal refused to permit the attempted warrantless search. On the same date, U.S. Magistrate John W. Cooley issued a warrant for inspection upon the application of OSHA Compliance Officer John Stoessel.

On the following day, Stoessel and another compliance officer again attempted to conduct an inspection of Federal's premises but they were refused entry this time on the ground that the warrant had been improperly issued. This Court ultimately held the warrant invalid but not until July 29, 1981. 655 F.2d 793. In the interim, OSHA conducted inspections of Federal's premises pursuant to orders of the district court, resulting in four May 2, 1980, citations.[2] Instead of holding a hearing on the citations, the ALJ granted Federal's motion to suppress all evidence obtained through the invalid inspection warrant and dismissed the proceedings on January 4, 1982. He relied on a prior ruling of the Commission in *Secretary of Labor v. Sarasota Concrete Co.,* 9 O.S.H.C. (BNA) 1608 (Rev.Comm'n, 1981), which was appealed by the Secretary and is now awaiting decision after oral argument on July first, 693 F.2d 1061 (11th Cir.). Since the Eleventh Circuit has not yet issued its decision, the matter before us is one of first impression. In *Sarasota Concrete Co.,* as here, the warrant was sought, received and executed[3] in good faith, but

---

* The Honorable Edward Dumbauld, Senior District Judge for the Western District of Pennsylvania, is sitting by designation.

1. The ALJ's order became a final order of the Commission under 29 U.S.C. § 661(i) because no member of the Commission granted the Secretary's petition for review.

2. OSHA alleged the existence of 16 serious, 5 wilful, 5 repeated, and 2 other-than-serious violations, and proposed penalties of $35,400 (App. 001–009). Although the citations state

that the inspections occurred from January 10, 1980, until May 2, 1980, they did not occur until after this Court denied Federal a stay pending appeal on February 27, 1980, and after the district court issued a further order on April 3, 1980. See Secretary's Br. 3, Supp.App. 5, and 655 F.2d at 795.

3. In the present case the warrant was executed by the Secretary a few weeks after this Court handed down an order on February 27, 1980, denying Federal a stay pending appeal because "we cannot conclude that it is likely that the

nevertheless a divided Commission held there that evidence obtained from the inspection must be suppressed under the Fourth Amendment. Before discussing that issue we must respond to preliminary arguments advanced by Federal.

## I. *Federal's Relitigation Argument Is Baseless*

■ Federal first urges that the Secretary cannot litigate the question whether the exclusionary rule applies on the ground that "[t]he Secretary in this appeal is attempting to re-litigate an issue he has already unsuccessfully argued once before this court" (Br. 9). However, this Court rejected that argument when it denied Federal's motion to dismiss the appeal on March 11, 1982. In addition, in the 1981 appeal the hearing panel found it unnecessary to reach matters raised by Federal except the question of the validity of the inspection warrant issued without probable cause. 655 F.2d at 798.[4] Consequently, Federal is incorrect in stating that the present issue was decided adversely to the Secretary on the prior appeal.

## II. *The Secretary Exhausted His Administrative Remedies*

■ Federal also argues that we cannot consider this appeal because the Secretary "failed to properly exhaust administrative remedies" (Br. 10). However, the Secretary raised the issue of a good-faith exception to the exclusionary rule when moving the ALJ to set aside his dismissal order (Supp.App. 1–2). Since the issue had been raised by the parties before the ALJ, it was a proper issue to raise before the Commission (29 CFR 2200.92(d)) and it was specifically

raised in the Secretary's petition asking the Commission to overrule the ALJ (App. 126–127).

Federal's further exhaustion contention is that the Secretary's petition for Commission review was untimely because it was not filed until 28 days after the ALJ's decision instead of 20 days thereafter. However, the petition was filed with the Commission's executive secretary within the requisite 30 days after the judge's decision. See 29 CFR 2200.91(b)(3). No more was required.[5]

Finally, Federal contends that the Secretary cannot support an exception to the exclusionary rule because the Secretary did not attack the Commission's decision in *Sarasota Concrete Co., supra,* in his review petition addressed to the Commission. On the contrary, the Secretary in his review petition acknowledged that the ALJ was bound by the Commission's decision in *Sarasota Concrete Co., supra.* Rather than requesting a remand to the ALJ, the Secretary, "in the interest of conserving the Commission's resources," asked that the Commission review the ALJ's order and argued that "the exclusionary rule does not apply here" since the government agents were "acting reasonably and in good faith" and "the Secretary had at all times a reasonable and good faith belief that his actions were proper." App. 126.

## III. *The Exclusionary Rule Is Inapplicable*

■ Federal's argument on the merits is that the evidence discovered by the OSHA compliance officers should be suppressed because the warrant authorizing the inspec-

---

appellant [Federal] will prevail on the merits of this appeal," although Federal ultimately did prevail on July 29, 1981, when the initial appeal was decided. 655 F.2d 793.

**4.** The dissent suggests that despite the explicit disclaimer by the panel, the Secretary is precluded by res judicata from raising the applicability of the exclusionary rule because he raised it in a petition for rehearing after the 1981 panel decision (*infra,* p. 1025). The dissenting judge cites no authority, and we know of none, to support the view that denial of a rehearing without an opinion on an issue that was ex-

pressly left undecided by the original panel is equivalent to a holding on that issue for res judicata purposes.

**5.** The dissent argues that "asking the Commission to review an involved constitutional issue within forty-eight hours of a mandated finality deadline" is insufficient time (*infra,* p. 1026). However, 29 C.F.R. 2200.91(b)(3) does not require a Commission decision on the issue within thirty days, but only that a Commission Member decide to accept the case for review within that time period.

tion was ultimately held to be invalid in July 1981. This argument overlooks the fact that the inspections were made pursuant to the district judge's February 20 and April 3, 1980, orders sustaining the warrant's validity and requiring Federal to permit an OSHA search of its premises (see notes 2 and 3 *supra*). Therefore, the question before us is whether the evidence gathered through OSHA's reasonable and good-faith inspection pursuant to a warrant upheld by the district court and provisionally upheld by this Court must be suppressed under the exclusionary rule because the warrant was invalidated on appeal more than a year thereafter. We hold that a good-faith, reasonable belief exception to the exclusionary rule is appropriate in the circumstances of this case.[6]

Although the Supreme Court has not yet reconsidered the validity of the exclusionary rule in criminal cases, *Taylor v. Alabama,* —— U.S. ——, ——, 102 S.Ct. 2664, 2669–70, 73 L.Ed.2d 314 (1982),[7] it has never applied the rule in a civil proceeding, thus suggesting "that the rule should not be applied to OSHA proceedings." *Todd Shipyards Corp. v. Secretary of Labor,* 586 F.2d 683, 689 (9th Cir.1978). In a criminal case, *United States v. Williams,* 622 F.2d 830, 841–846 (5th Cir.1980) (*en banc*), certiorari denied, 449 U.S. 1127, thirteen members[8] of the then Fifth Circuit did narrow the exclusionary rule by recognizing a good-faith exception as follows (622 F.2d at 840):

Sitting en banc, we now hold that evidence is not to be suppressed under the exclusionary rule where it is discovered by officers in the course of actions that are taken in good faith and in the reasonable, though mistaken, belief that they are authorized. We do so because the exclusionary rule exists to deter willful or flagrant actions by police, not reasonable, good-faith ones. Where the reason for the rule ceases, its application must cease also. The costs to society of applying the rule beyond the purposes it exists to serve are simply too high—in this instance the release on the public of a recidivist drug smuggler—with few or no offsetting benefits. We are persuaded that both reason and authority support this conclusion.

In the ensuing seven pages, the Court explained why it was adopting a good-faith exception to the exclusionary rule. Perhaps the most significant reason for the exception is that the exclusionary rule can have no deterrent effect when, as here, law enforcement personnel have acted mistakenly, but in good faith and on reasonable grounds. 622 F.2d at 842. Consequently, a majority of the *en banc* Court concluded (622 F.2d at 846–847):

Henceforth in this circuit, when evidence is sought to be excluded because of police conduct leading to its discovery, it will be open to the proponent of the evidence to urge that the conduct in question, if mistaken or unauthorized, was yet

---

**6.** Federal and the dissent argue that the Commission may choose to apply the exclusionary rule "as a matter of its own policy pursuant to its supervisory power over the Act's enforcement" (Br. 21–28; *infra* p. 1027). But the ALJ applied the exclusionary rule here under the Commission's decision in *Sarasota Concrete Co., supra,* which rested heavily on Fourth Amendment grounds. 9 O.S.H.C. (BNA) at 1612–1615. The Secretary has convincingly responded that the supervisory argument falls in the light of *United States v. Payner,* 447 U.S. 727, 736–737, 100 S.Ct. 2439, 2446–2447, 65 L.Ed.2d 468, and *United States v. Williams, infra,* 622 F.2d at 846–847 (Br. 11–13). We hold that the Constitution does not warrant the ALJ's and the Commission's applying the exclusionary rule in the circumstances of this case and that therefore this evidence is not to be suppressed.

**7.** The question whether there should be a reasonable and good-faith exception to the exclusionary rule in criminal cases may be resolved by the Supreme Court in *Florida v. Royer,* —— U.S. ——, 103 S.Ct. 1319, 75 L.Ed.2d 229 or in *Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 436, 74 L.Ed.2d 595.

**8.** Judges Hill's and Fay's concurrence joined in the majority rule established in the joint opinion of Judges Gee and Vance in which nine other members of the Fifth Circuit also concurred. 622 F.2d at 840 n. ***. The Commission was therefore incorrect in stating in *Sarasota Concrete Co., supra,* that only 12 of a 24-judge panel joined in the good-faith exception adopted in *Williams.*

taken in a reasonable, good-faith belief that it was proper. If the court so finds, it shall not apply the exclusionary rule to the evidence.

The Tenth Circuit, while not confronted with the identical issue posed in this case, followed the lead of the Fifth Circuit, ruling that the *Williams* reasoning "is equally applicable to civil OSHA enforcement proceedings." *Robberson Steel Co. v. OSHRC,* 645 F.2d 22, 22 (10th Cir.1980). In *Robberson* and the earlier case of *Savina Home Indus. v. Secretary of Labor,* 594 F.2d 1358 (10th Cir.1979), the Court refused to apply the exclusionary rule to OSHA proceedings involving warrantless inspections occurring before *Marshall v. Barlow's Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305. The Court reasoned that OSHA inspectors could not be charged with knowledge of a warrant requirement before *Barlow's* was decided and that therefore the exclusionary rule's deterrence function could not be served. *Accord, Todd Shipyards Corp. v. Secretary of Labor, supra.* The Court, in effect, recognized a reasonable, good-faith exception to the exclusionary rule.[9]

Just as in criminal cases, there would be "substantial societal harm incurred by suppressing [the] relevant and incriminating evidence" uncovered by the inspections here. See *United States v. Williams, supra,* 622 F.2d at 843. Application of the exclusionary rule in this case would preclude the Commission's issuance of an order requiring abatement of hazardous working conditions at Federal and also preclude the issuance of subsequent citations with enhanced penalties to ensure compliance with the Occupational Safety and Health Act. See *Atlas Roofing Co. v. OSHRC,* 518 F.2d 990, 1002, 1009, 1010 (5th Cir.1975), affirmed, 430 U.S.

442, 97 S.Ct. 1261, 51 L.Ed.2d 464. The Secretary might be unable to obtain another warrant to reinspect Federal because the original probable cause might be too stale or non-existent now. In addition, the purpose of the Act to regulate "a myriad of safety details that may be amenable to speedy alteration or disguise," *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 316, 98 S.Ct. 1816, 1822, 56 L.Ed.2d 305, may have been or could easily be thwarted even though there is no question about the Secretary's good faith and reasonable belief that his action was proper.

We cannot credit Federal's statement that the exclusionary rule should be applied to deter OSHA personnel from agency excesses, because the Secretary has acted reasonably and in good faith. Indeed in all the OSHA warrant cases before this Court after the Supreme Court required a warrant in *Barlow's, Inc., supra,* in 1978, only the warrant to inspect Federal was found by us to be unsupported by probable cause.[10]

Furthermore, the Secretary has reminded us that there are already substantial deterrents to OSHA violations of employers' constitutional rights. Thus a neutral magistrate's approval must be obtained before the Secretary may inspect premises over an employer's objection, and the employer may still move to quash a warrant prior to its execution or refuse entry pursuant to the warrant unless the Secretary prevails in civil contempt proceedings. See *Rockford Drop Forge Co. v. Donovan,* 672 F.2d 626, 631 (7th Cir.1982).

Finally, as this Court noted in *United States v. Carmichael,* 489 F.2d 983, 988 (7th Cir.1973) (*en banc*), "good faith errors cannot be deterred" by the exclusionary rule. In particular, a good-faith, reasonably

9. The Tenth Circuit did say in dicta that in post-*Barlow's* inspections "the exclusionary rule would be applicable to OSHA proceedings involving inspections violative of the warrant requirements announced in *Barlow's.*" 594 F.2d 1358, 1363. It also noted, citing *Todd Shipyards, supra,* that "the Ninth Circuit has recently suggested the contrary." 594 F.2d at 1363 n. 7. However, both cases involved warrantless searches, while the case before us today involved a warrant executed only after the

district court had approved the warrant and this Court had denied a stay pending appeal. See *supra* note 3.

10. See *Rockford Drop Forge Co. v. Donovan,* 672 F.2d 626, 631 (7th Cir.1982); *Marshall v. Milwaukee Boiler Mfg. Co.,* 626 F.2d 1339, 1342, 1343 (7th Cir.1980); *Burkart Randall Division of Textron, Inc. v. Marshall,* 625 F.2d 1313, 1319 (7th Cir.1980).

based violation of this type cannot be deterred. OSHA would continue to be justified in executing a warrant issued by a magistrate, when as here it was approved by the district court and preliminarily by us. It is noteworthy that the Secretary did not conduct his inspection until the April 3, 1980, district court's second authorizing order, which was more than a month after we had denied Federal's stay request. Such judicial approval certainly demonstrates the Secretary's good faith, the reasonableness of his belief that the warrant was proper, and his caution before executing the warrant.[11]

The Commission's order suppressing the evidence obtained pursuant to the warrant and dismissing the proceedings is reversed, and the cause is remanded for hearing on the merits of the four citations.

PELL, Circuit Judge, dissenting.

The majority opinion holds that a good faith, reasonable belief exception to the exclusionary rule is appropriate in the circumstances of this case. As I view those circumstances, the exclusionary rule should have been applied and I therefore respectfully dissent.

While the primary focus of this dissent is upon this important issue, I initially comment briefly on the majority's disposition of the other claimed issues by Federal, neither of which justify the summary disposition accorded them by the majority. The claim of Federal that the Secretary cannot relitigate an issue it already has unsuccessfully argued before this court is characterized by the majority as baseless. In fact, when the case was before this court before, this court holding that the warrant was invalid, the Secretary filed a petition for rehearing which identified the issue of whether the evidence obtained pursuant to said warrant should be suppressed as being "a necessary question of exceptional importance." Fur-

ther, in the petition the Secretary addressed what he termed an issue of exceptional importance: whether the exclusionary rule applied to the pending OSHA enforcement proceedings. Further the Secretary pointed out that he had raised the exclusionary rule question before the Seventh Circuit panel both in his reply brief and on three additional occasions by letters of supplemental authority. All of these were before the panel which unanimously decided that the warrant was invalid. Seven of the eighteen pages of the brief in support of the rehearing petition were devoted to the exclusionary rule. All of the judges on the original panel voted to deny the petition for rehearing and five of the six active members of the court voted to deny a rehearing *en banc.* Under these circumstances the claim of res judicata would scarcely seem to be baseless.

Further, the majority opinion finds additional support for its position on this preliminary issue by the fact that a panel of this court in 1982 rejected Federal's motion prior to oral argument to dismiss the appeal.

As the judges of this court know, such a motion ordinarily comes before a designated motions panel, often on an incomplete record, and customarily is only granted in cases clearly indicating that the issues do not warrant further judicial attention. It is true in the present case that the motions panel concluded that it was not likely that the appellant would prevail on the merits of the appeal so as to justify a stay, at least at that time. Thereafter, oral argument was heard and the panel hearing the case unanimously ruled that the warrant was invalid. This was all that was necessary for the disposition of the case before the court and no inference can fairly be drawn from the fact that the court did not gratuitously discuss other issues that had been raised by the parties.

---

11. The dissent notes that it might be "arguably persuasive to a government agent who has in his grasp a court approved warrant that he was entitled to proceed lawfully and therefore he would be acting in good faith" (*infra,* p. 1030). The decision in this case rests on even stronger grounds. The warrant was not only approved by the district court but this Court refused to stay the district court's order. See *supra* notes 2 and 3. Reliance on such judicial approval is certainly reasonable.

Likewise, I find less clear than the majority does the basis for its holding that the Secretary had not failed to exhaust administrative remedies properly. The Secretary did belatedly raise an issue of a good faith exception when moving the ALJ to set aside his dismissal order. This was clearly a last minute effort to establish a foundation for an appeal to the Commission. The original order of the ALJ suppressing evidence obtained through the inspection warrant read in part as follows:

On December 9, 1982, respondent [Federal] filed motions for suppression of all evidence obtained pursuant to the warrant, and for dismissal of these proceedings.

No response to these motions has been filed.

Further, the filing of the review petition before the Commission asking the Commission to review an involved constitutional issue within forty-eight hours of a mandated finality deadline without any prior ALJ consideration thereof can scarcely be regarded as giving the Commission the opportunity to apply itself to the issue at the time appropriate under the Commission's practice. Even in the last minute petition the Secretary did not challenge the clearcut precedent on the exclusionary rule which had been set forth in *Secretary of Labor v. Sarasota Concrete Co.,* 9 O.S.H.Cas. (BNA) 1608 (1981), *appeal docketed,* No. 81–5621 (5th Cir. June 23, 1981), now pending in the Eleventh Circuit. If the Secretary has reserved his rights for court review, he has done so on a meager basis.

Having said this, I turn to the principal issue considered by the majority opinion, that of the application of the exclusionary rule to the evidence secured pursuant to a legally invalid warrant. As an initial matter, I am one who tends to the view that the exclusionary rule in application for some years has failed to support its rationale of deterring official misconduct. The Supreme Court has not seen fit to relegate the exclusionary rule to dodo status and I do not regard it as a province of the lower courts to chip away at its validity by the

exception route such as the majority has done in this case. If we assume that the exclusion of evidence improperly obtained should occur because it has a deterrent effect, and the appropriate body to decide that it does not have that effect is the Supreme Court, it seems to me that the deterrent effect could be significantly greater in the case of a Government agency such as OSHA than it would in the case of an ordinary policeman who may have little to do after the search and seizure other than to be a witness in subsequent court proceedings. The OSHA personnel are, of course, directly interested in enforcing the Act not only during the inspection but in subsequent enforcement procedures. Those embracing the needed and desirable objectives of OSHA, remaining as they have under the watchful eye of Congress, which can curb its inspection excesses both directly and by budgetary control, should be considerably more concerned with proceeding in their duties within the rule of law.

I think it is appropriate first to look at the facts leading up to the first effort to inspect in some greater detail than the majority has. A newspaper article appeared in a January 9, 1980, edition of the Chicago Sun-Times headed "Hands severed, reattached in 23-hour surgery." The third paragraph stated:

The injury occurred early Monday at Clearing Die Casting Co., 6220 S. New England, where Alamillo [the surgery patient] was working on a punch press.

The only reference to the cause of the injury was:

Family members were uncertain how the accident took place, and Clearing Die Casting officials refused comment.

No reference was made in the article to culpability on anyone's part or to any OSHA requirements whatsoever. Indeed, it may be reasonably surmised that even hurtful industrial accidents such as the one here involved which do not customarily claim space in a metropolitan newspaper did so on this occasion because of the unusual, extended surgery in reattaching the hands which had been severed.

The very next day—January 10, 1980—the same newspaper ran a picture of Alamillo with Dr. James D. Schlenker who headed the surgical team. A five-sentence explanation under the picture included a statement attributed to Thomas Kott, local OSHA area director, who "said the plant where Alamillo was injured had been required by law in 1975 to correct punch press safety violations that led to a citation and fine" and that "OSHA planned to make an unannounced inspection of the plant Thursday morning." Before that day had ended, OSHA Compliance Officer John Stoessal visited the premises which the newspaper had identified as the scene of the ·accident and attempted a warrantless search.

Again there was no indication as to the cause of the accident or that Federal Clearing Die Casting Company, identified only as Clearing Die Casting Company in the newspaper article, had provided an unsafe place or condition causing or contributing to the accident. It appears to me that Federal correctly characterized the situation in its brief to this court as that the inspecting agent essentially put all of his training and investigative ability on the shelf, opened the newspaper, rummaged in a file of abated citations, and marched over to the magistrate's office to obtain a search warrant, after being denied his request for a warrantless search.

The majority adverts to this situation only as that OSHA was acting pursuant to the Department of Labor's Occupational Safety and Health Field Operations Manual. This assumption apparently is based upon a statement to that effect in the Secretary's original brief although in the same page in the brief the Secretary in a footnote referred to the manual as providing for investigation of "accidents involving significant publicity." The only significant aspects that I can discern in this situation are with regard to the extraordinary surgical effort and there is not a whisper of a basis for determining that the unfortunate accident resulted from an unsafe working place or condition at the employer's facility.

Before addressing specific areas of disagreement with the majority's opinion, I will set forth a survey of the established position of the Commission with regard to the application of the exclusionary rule. I do so by way of background because of the importance, as I see it, of the relationship between OSHA and the Commission. The Review Commission is an "administrative tribunal" with "special competence in the relevant field." *Atlas Roofing Co. v. OSHRC,* 430 U.S. 442, 455 & n. 13, 97 S.Ct. 1261, 1269 & n. 13, 51 L.Ed.2d 464 (1977). It was designed to have a policy role in enforcement of the Act, *Brennan v. Gilles & Cotting, Inc.,* 504 F.2d 1255, 1262 (4th Cir. 1974), and "is presumed to have technical expertise and experience in the field of job safety. A court must, therefore, defer to the findings and analysis of the Commission unless such findings are without substantial basis in fact." *Brennan v. OSHRC,* 501 F.2d 1196, 1198 (7th Cir.1974). Its "responsibility for the administration of OSHA" is "plenary," *California Stevedore & Ballast Co. v. OSHRC,* 517 F.2d 986, 989 (9th Cir. 1975), and its review of the Secretary's enforcement actions "can include consideration of any viable constitutional defenses to enforcement." *Blocksom & Co. v. Marshall,* 582 F.2d 1122, 1124 (7th Cir.1978). By performing its statutory function of reviewing such enforcement actions, "Commission members will be alerted to issues which require the expert and unifying guidance that Congress intended them to provide." *McGowan v. Marshall,* 604 F.2d 885, 890 (5th Cir.1979). The Third Circuit referred specifically to the Commission's responsibility for determining the applicability of the exclusionary rule in *Babcock & Wilcox Co. v. Marshall,* 610 F.2d 1128, 1139 (3d Cir. 1979):

> [T]hat tribunal may decide, independently of any decision by the federal courts as to the applicability of the exclusionary rule to administrative proceedings, to apply the rule as a matter of its own policy pursuant to its supervisory power over the Act's enforcement.

The Commission, in the exercise of such responsibility, has decided that it was neces-

sary to apply the exclusionary rule in OSHA cases. The Secretary has cited no persuasive authority for his argument that the Commission was without relevant supervisory power to do so.

There are both statutory and constitutional reasons why the evidence seized by OSHA during an illegal inspection should be excluded from evidence and the resulting citations vacated, as was done by the Commission in this case. OSHA citations may only be issued "upon inspection or investigation" conducted pursuant to law. 29 U.S.C. § 658(a). Congress set forth numerous requirements for the conduct of a lawful inspection. *See, e.g.,* 29 U.S.C. § 657(a), (e). In addition, the legislative history makes clear that "in carrying out inspection duties under this Act, the Secretary, of course, would have to act in accordance with applicable constitutional protections." 116 Cong.Rec. 38709 (1970) (Statement of Rep. Steiger).

In one of its earliest decisions, the Commission held that where an OSHA citation is not preceded by a lawfully conducted inspection, it must be vacated:

> It is apparent from the wording of the statute that Congress intended to empower the Secretary to act only by means of an "authorized" inspection, which requires at the very outset the presentation of "appropriate credentials to the owner, operator or agent in charge." The Secretary has authority to make inspections only by complying with Section 8(a) and can issue a citation only "upon inspection and investigation" (Section 9(a)). Since the Secretary did not follow the inspection procedure required by the Act (and his own regulations) with respect to Citation for Serious Violation No. 3, there was no legal basis for its issuance. It must, therefore, be vacated.

*Secretary v. Hendrix,* 2 O.S.A.H.R.C. 1005, 1022 (1973), *aff'd on other grounds sub nom. Brennan v. OSHRC,* 511 F.2d 1139 (9th Cir. 1975). Commission decisions have also vacated OSHA citations based upon inspections not conducted "at reasonable times" as required by 29 U.S.C. § 657(a). *See, e.g.,*

*Secretary of Labor v. Gordon's Warehouse, Inc.,* 6 O.S.H.Cas. (BNA) 1102 (1977) (since timing of an inspection conducted 3 days after a serious fire in the employer's premises was unreasonable, resulting citations must be vacated). This court made a similar observation in *Weyerhaeuser Co. v. Marshall,* 592 F.2d 373, 376 n. 2 (7th Cir.1979): "A defect in the warrant application would make the present inspection 'unreasonable.'" *See also Marshall v. Pittsburgh-Des Moines Steel Co.,* 584 F.2d 638, 644 (3d Cir.1978) ("[T]he overriding ameliorative goals of the statute cannot justify circumvention of its procedural requirements.").

In *Secretary of Labor v. Genesee Valley Industrial Packaging,* 8 O.S.H.Cas. (BNA) 1509, 1510 (1980), the Commission vacated citations issued following a non-consensual inspection of the employer's premises and held that: "The remedy where a Fourth Amendment right is violated is the suppression of the evidence gained by that violation."

The benefits derived from applying the exclusionary rule in OSHA proceedings are significant. OSHA itself has acknowledged that an inspection violating the Fourth Amendment would constitute irreparable injury. *Cerro Metal Products v. Marshall,* 620 F.2d 964, 974 (3d Cir.1980). According to the Occupational Safety and Health Review Commission such suppression of evidence will have "relatively rapid and widespread effect in ensuring that OSHA inspections are conducted in accordance with the Fourth Amendment." *Secretary of Labor v. Sarasota Concrete Co.,* 9 O.S.H.Cas. at 1613. It will also have "an appreciable deterrent effect on the actions of OSHA officials and inspectors" and it will "deter misconduct by OSHA officials." The case law abounds with examples of why such a deterrent is needed. In *Genesee Valley* the OSHA inspector "knew he had no right to go into the area without either a warrant or the employer's consent [but he] ... refused to leave and told the truckdriver that the inspection had to be conducted then and there." 8 O.S.H.Cas. at 1510. *See also Marshall v. Milwaukee Boiler Manufactur-*

*ing Co.,* 626 F.2d 1339, 1347 (7th Cir.1980) ("OSHA has scarcely functioned in the manner that would be expected from an arm of the United States Government"); *Usery v. Lacy,* 628 F.2d 1226, 1230 (9th Cir.1980) (employer cited by OSHA "simply gave up to the vast power of the Federal Government") (Kelleher, J., dissenting); *Cerro Metal Products,* 620 F.2d at 974 ("a typical OSHA inspection is more than an unobtrusive scrutiny"); *Chlorine Institute, Inc. v. OSHA,* 613 F.2d 120, 120 (5th Cir. 1980) (per curiam) ("This case abounds with examples of bureaucratic ineptness."); *Donovan v. Royal Logging Co.,* 645 F.2d 822, 832 (9th Cir.1981) ("This case demonstrates how the Secretary can let enforcement of OSHA and its regulations get out of hand"); *Marshall v. Whirlpool Corp.,* 593 F.2d 715, 734 (6th Cir.1979) ("A vulnerable or misguided federal inspector might abuse his authority. . . . It was this inherent lack of control over a potentially abusive bureaucrat at which Congress recoiled."); *Stephenson Enterprises, Inc. v. Marshall,* 578 F.2d 1021, 1026 (5th Cir.1978) ("in issuing these citations the Secretary proceeded with something less than the attentive caution and careful precision with which employers are expected to comply with safety standards"); *Ringland-Johnson, Inc. v. Dunlop,* 551 F.2d 1117, 1118 (8th Cir.1977) (per curiam) ("OSHA's slipshod handling of litigation is inexcusable and certainly unbecoming of the Government. We have noticed errors similar to those in this case . . . in nearly every reported case involving OSHA violations.").

The exclusionary rule has a beneficent effect because it sends a message to the OSHA enforcement officials that the results of their inspections will be nullified if the inspection violates the Fourth Amendment. If the rule were not applied in OSHA proceedings, a contrary message would be received with a corresponding detrimental effect upon the employer's "constitutional right to go about his business free from unreasonable official entries upon his private commercial property." *See v. City of Seattle,* 387 U.S. 541, 543, 87 S.Ct. 1737, 1739, 18 L.Ed.2d 943 (1967). "The rule is calculated to prevent, not to repair. Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it." *Elkins v. United States,* 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669 (1960).

It is no well guarded secret that OSHA inspections are anathematic to most operators of industrial facilities. No doubt some of the distaste arises from the fact that certain of these operators realize that safety violations do exist and that inspections will certainly result in their discovery, this in turn to be followed not only by penalties but by costly remedial processes. On the other hand, there seems to be a feeling, apparently not entirely groundless, that the inspection will be followed by a listing of violations even though of questionable merit or justification.

OSHA inspectors cannot be unmindful of this frequently found atmosphere of distrust and dislike as they enter a place of work for inspection. While this is unfortunate, it does not justify a response of bureaucratic arrogance or disregard of reasonable and lawful procedures. It is this failure, when it occurs, which must be deterred in future cases by the application of the exclusionary rule. Further, to the extent that bureaucratic arrogance exists, there is no way of knowing how much it is heightened by a company's resistance to voluntary inspections, a resistance which is lawful and should not be answered by retribution. In the present case, it is noted that the inspection apparently was plantwide and not concerned merely with the operation which resulted in the injury to Alamillo. As a result of the wall-to-wall inspection, there was a listing of sixteen serious, five willful, five repeated, and two other-than-serious violations with proposed penalties of $34,500. One may reasonably surmise that the inspection was painstakingly careful, to say the least.

Turning now to specific points in the majority opinion, that opinion, drawing a distinction between criminal cases where the exclusionary rule is concededly still via-

ble and civil cases, cites *Todd Shipyards Corp. v. Secretary of Labor,* 586 F.2d 683, 689 (9th Cir.1978), for the suggestion that the exclusionary rule should not be applied to OSHA proceedings. This seems to be a negative type of reasoning in the absence of clear-cut authority that the Supreme Court has rejected the application of the rule in civil proceedings of the type here involved. In this respect, as has been previously noted, the proposed monetary penalty is a substantial one. Also, once initial penalties have been assessed, the situation is ripe, as the majority opinion acknowledges, for the "issuance of subsequent citations with enhanced penalties." In *Todd* the decision before the Ninth Circuit turned on retroactive application of the warrant requirement of *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), and the gratuitous suggestion that the rule should not be applied to OSHA proceedings carries little weight.

The majority opinion finds its principal support for reading into the exclusionary rule a good faith exception in the case of *United States v. Williams,* 622 F.2d 830 (5th Cir.1980), *cert. denied,* 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981), a case in which an almost evenly divided *en banc* court purported in the majority opinion to narrow the exclusionary rule to this extent. *Williams* rests on facts bearing no resemblance to those here at issue but, even if we assume arguendo that the *Williams* test applies to OSHA proceedings, the present case falls within the circumstances in which *Williams* stated that the exclusionary rule should be applied. The *Williams* majority opinion stated that:

> We emphasize that the belief, in addition to being held in subjective good faith, must be grounded in an objective reasonableness. It must therefore be based upon articulable premises sufficient to cause a reasonable, and reasonably trained, officer to believe that he was acting lawfully. Thus, a series of broadcast breakins and searches carried out by

a constable—no matter how pure in heart—who had never heard of the fourth amendment could never qualify. 622 F.2d at 841 n. 4a.

The majority opinion in the present case does not seem to question the fact that the inspection must meet a two-pronged test of being both reasonable and in good-faith. It might be arguably persuasive, to a government agent who has in his grasp a court approved warrant that he was entitled to proceed lawfully and therefore he would be acting in good faith. Of course, as this court observed in the opinion holding the warrant invalid, the agent's good faith belief that an *accident* had indeed occurred, was not questioned. *Donovan v. Federal Clearing Die Casting Co.,* 655 F.2d 793, 797 (7th Cir.1981). Believing in good faith that an accident has occurred is by no means a good faith belief that it was the result of a safety violation.

Thus this court went ahead to say:

> Nonetheless, it is well settled that the occurrence of an accident, in and of itself, is not proof of an OSHA violation. *National Realty and Construction Co., Inc. v. OSHRC,* 489 F.2d 1257 (D.C.Cir.1973). OSHA failed to make any attempt to question the victim or members of his family—perhaps even a conversation with one of the victim's physicians might have made the outcome in this case different. Similarly, a complaint filed by a co-worker of the victim might have been sufficient to satisfy the 'specific evidence' requirement and cure the fatal flaw in the application. A magistrate must be presented with facts upon which he can exercise the independent judgment required of him. Mere journalistic prose is not the kind of underlying factual data upon which a magistrate can exercise such judgment.
>
> Furthermore, the application is nothing more than unrelieved boilerplate, stating merely that the occurrence of the accident 'indicated the existence of dangerous conditions that may be in violation of

the Act and or regulations issued pursuant thereto.'

*Id.* (footnotes omitted).

While this court was there considering the matter only of the validity of the warrant, I fail to see why this inattention to ordinary and normal proceedings would not reflect upon the good faith of the agent and certainly it has significant bearing on the reasonableness of his conduct. The actions taken by OSHA's compliance officer in this case could hardly be regarded as objectively reasonable. His pell-mell rush to obtain the issuance of a warrant, ignoring on the way virtually every statutory and Congressional restriction and the constraints his own agency had imposed in order to implement its overall mission, indicates that he was on his own quest—not the agency's. At the very least, this demonstrates the type of "negligent conduct" which the exclusionary rule is intended to deter. *See Michigan v. Tucker,* 417 U.S. 433, 447, 94 S.Ct. 2357, 2365, 41 L.Ed.2d 182 (1974). Clearly, it is anything but the actions of a conscientious administrator. Even a lesser being—an ordinary prudent administrator, for example, is bound to follow his own guidelines as this court pointed out in *Chicago Bridge & Iron Co. v. OSHRC,* 535 F.2d 371, 375 (7th Cir. 1976). This is true even where the guidelines are less formal than published regulations. *See, e.g., Vitarelli v. Seaton,* 359 U.S. 535, 539, 79 S.Ct. 968, 972, 3 L.Ed.2d 1012 (1959) (a departmental order); *CBS v. United States,* 316 U.S. 407, 422, 62 S.Ct. 1194, 1202, 86 L.Ed. 1563 (1942) (policy announcements).

It is well settled, of course, that all industrial accidents are not occasioned by OSHA violations, as this court pointed out in *Federal Clearing.* It is eminently reasonable, therefore, to expect an OSHA inspector to make some preliminary inquiries regarding a newspaper account of an accident before seeking the extraordinary powers of the federal courts to compel entry into a private business establishment in order to find out whether that accident involved any noncompliance with any OSHA requirements.

This is not only dictated by common logic, but is required by constraints placed upon OSHA inspectors by the Congress and the agency itself. For the past several years Congress has included in each Labor Department appropriation a number of restrictions on what inspection activities can be financed with appropriated funds and has totally exempted certain establishments from OSHA inspections by prohibiting use of appropriated monies to conduct such inspections. OSHA has instructed its field staff to consider carefully each of these before deciding who should be inspected. These are included in Chapter IV of the OSHA Field Operations Manual. In addition, in response to a critical General Accounting Office report, OSHA adopted on September 1, 1979 (prior to the issuance of the warrant in this case) OSHA Instruction CPL 2.12A. This requires a "thorough evaluation of all complaints" of OSHA violations prior to deciding whether or not to inspect. The evaluation must include a determination of the *nature of the hazard* and an attempt to contact the source of the complaint for any additional information necessary to complete the evaluation. This instruction emphasized that: "*[I]n no event should a complaint be acted upon until it has been thoroughly evaluated*" (emphasis added).

I cannot conceive that the agent in this case, on the basis of the meager report of an accident in a newspaper, presumably being aware of his own agency's requirements before making an inspection, could reasonably, objectively believe that a violation existed.

Further, the agent was not entitled to rely upon the fact that there had been a 1975 citation for, as this court noted in its previous decision, both parties had conceded that the hydraulic punch press involved in the 1980 accident was not one of the machines cited in 1975 to be in violation of OSHA regulations. 655 F.2d at 798.

In support of its position on the good faith exception, the majority opinion relies upon two Tenth Circuit cases: *Robberson Steel Co. v. OSHRC,* 645 F.2d 22 (10th Cir.

1980) (per curiam), and *Savina Home Industries, Inc. v. Secretary of Labor,* 594 F.2d 1358 (10th Cir.1979). The three paragraph decision in *Robberson* involved the matter of retroactive application of the *Barlow's* warrant requirement. The same issue controlled in *Savina Home Industries* and the court held that the decision in *Savina* was determinative in *Robberson.* The issue of the good faith exception to the exclusionary rule was not before the court in either case. It is of interest to note that in *Savina* the court pointed out that the question of the exclusionary rule's general applicability to non-criminal contexts had not been decided by the Supreme Court. The court, however, pointed out that although in *United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), the Court declined to apply the rule in a civil test case it did so because under the facts of that case the deterrence purpose of the rule would not have been furthered by its application. In the case before us, as I have endeavored to show, the deterrence purpose would, could, and should be furthered as the Commission believes appropriate. The *Savina* panel also pointed out that the Supreme Court has approved application of the exclusionary rule in certain civil cases characterized by it as quasi-criminal. In addition, the Tenth Circuit cited several lower court opinions approving the exclusionary rule application in civil and administrative cases. 594 F.2d at 1362.

I find the following language from *Savina* particularly applicable to the present case:

> We believe the exclusionary rule would be applicable to OSHA proceedings involving inspections violative of the warrant requirements announced in *Barlow's.* Such an application would be consistent with the principles announced in *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), and subsequent cases. Certainly considerations of preserving judicial integrity and deterring official lawlessness do not become inconsequential simply because an illegal search is conducted by the Department of Labor instead of by the Department of Justice.

594 F.2d 1363 (footnote omitted).

On the matter of differentiation between civil and criminal cases, there is a valid differentiation for the purposes of the application of the rule. I regard the severe penalties that can be asserted in OSHA proceedings as being of the hue of quasi-criminal.

The majority opinion also supports its position by stating that the Secretary might be unable to obtain another warrant to reinspect Federal because "the original probable cause might be too stale or non-existent now." Aside from the question that this court had previously held that there was never any probable cause shown in the first place, as Judge McKay of the Tenth Circuit stated in dissenting in *Marshall v. C.F. & I. Steel Corp.,* 576 F.2d 809, 819 (10th Cir.1978), in respect to this type of situation:

> There is less impact from evidence suppression in such administrative hearings than in criminal cases because the inspectors can return and reinspect, employing proper procedures. The Secretary argues that return inspections impose an unreasonable strain on the agency's already limited manpower.... The best solution is to follow proper procedures the first time, but lack of personnel certainly should be no justification for riding rough shod over employer rights. The fault for delay lies with the agency; the remedy lies there also.

It is sheer speculation that OSHA may be unable to obtain another warrant because of staleness. In *Donovan v. Metal Bank of America, Inc.,* 516 F.Supp. 674 (E.D.Pa. 1981), *appeal docketed,* No. 81–2840 (3d Cir. 1981), the court pointed out that 28 U.S.C. § 658(c):

> [E]stablishes a six month time limit for issuance of *citations* following inspections or investigations. However, the statutory provision governing time of *inspections* sets no specific time limit. Rather it requires the Secretary to inspect "at reasonable times," section 657(a), or "as soon

as practicable" after receipt of a complaint, section 657(f).

516 F.Supp. at 679 (emphasis in original). To determine if evidence is stale for purposes of an OSHA warrant, the courts have considered whether the complaints are of the type which would be likely to disappear through "mere passage of time," or only if affirmative action were taken to correct them. *Burkart Randall Division v. Marshall*, 625 F.2d 1313, 1322 (7th Cir.1980); *Hern Iron Works, Inc. v. Donovan*, 670 F.2d 838, 840 (9th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 69, 74 L.Ed.2d 69 (1982); *In re Establishment Inspection of Seaward International, Inc.,* 510 F.Supp. 314, 318 (W.D.Va.1980), *aff'd mem.,* 644 F. 2d 880 (4th Cir.1981); *In re Inspection of Central Mine Equipment Co.,* 7 O.S.H.Cas. (BNA) 1185 (E.D.Mo.1979), *vacated on other grounds sub nom. Marshall v. Central Mine Equipment Co.,* 608 F.2d 719 (8th Cir.1979). Each of these cases holds that since the alleged hazardous condition would not disappear without affirmative action or was a part of the normal production processes, information between five and eight months old was not stale. Of course, where a hazardous condition *has* disappeared with the passage of time (or any other reason), OSHA's statutory purpose of obtaining abatement of such conditions has been achieved.

The majority opinion states that in all the OSHA warrant cases before this court, subsequent to *Barlow's,* only the warrant to inspect Federal was found to be unsupported by probable cause. This statement may well be true but the case before us is that of Federal Clearing Die Co. where the lack of probable cause which invalidated the warrant was so patent that no OSHA agent, I believe, could either in good-faith or with objective reasonableness have thought that probable cause existed. The evidence secured on this infirm and illegal basis should be excluded.